514 P.2d 257

**Joseph B. TAYLOR and Maxine M. Taylor, his wife, Appellants,**

**v.**

**SECURITY NATIONAL BANK, a California corporation, Appellee.**

**No. I CA–CIV 1849.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 18, 1973.

Leek & Oehler, by Terrence S. Leek, Bullhead City, for appellants.

Preston, Flournoy & Flick, by William R. Preston, William A. Flick, Flagstaff, for appellee.

## OPINION

EUBANK, Presiding Judge.

This appeal is from a judgment entered in an action to recover a deficiency judgment resulting from the resale of an airplane originally sold on a conditional sale contract, which was repossessed by the seller's assignee and sold for less than the balance due on the contract. Plaintiff-appellee sought recovery of the deficiency, interest, costs, and attorney's fees. Defendants-appellants (Taylor) filed a counterclaim for damages for plaintiff's alleged failure to comply with the Arizona Conditional Sales Act. The trial court entered judgment in favor of plaintiff for the amount of the deficiency, interest, and costs, and awarded plaintiff $5,000 as attorney's fees. The judgment also dismissed defendants' counterclaim. Defendants have appealed.

The issues, as presented by both parties to the appeal, are stated as:

(1) Whether the law of Arizona or that of California is applicable in determining the rights of the parties hereto; and

(2) Whether the trial court erred in awarding attorney's fees in the absence of any evidence as to actual or reasonable attorney's fees incurred in the enforcement of the contract.

Viewing the evidence in a light most favorable to sustaining the judgment of the trial court, the facts are as follows. In Needles, California, in the summer of 1967, a salesman for plaintiff's assignor, which was a California corporation with its place of business at Oakland, California, first approached Taylor, a resident of Arizona at that time and ever since. At that time he discussed the sale of the subject airplane with Taylor, and the latter decided to buy it. Thereafter, on July 19, 1967, a written conditional sales contract for the airplane was executed by Taylor and the president of plaintiff's assignor at Bullhead City, Arizona. This contract was assigned to plaintiff's corporate predecessor-in-interest, also a California corporation, on July 20, 1967, and notice of the assignment was given to Taylor. The contract, as assigned, provided for monthly installment payments to be made to the assignee at its office in Oakland, California. Plaintiff, also a California corporation, succeeded to the rights of the original assignee. Its office is also in Oakland. After the assignment, plaintiff's predecessor disbursed the necessary funds, and defendant Taylor picked up the airplane from the manufacturer's place of business in Kansas and brought it to Arizona, where it remained until it was repossessed. .

The contract contained no provisions as to governing law, but it did contain an acceleration clause and an agreement by the buyer to pay any deficiency resulting from repossession and resale and a reasonable attorney's fee in the event of enforcement action. Defendant made no installment payments whatsoever on the contract, and plaintiff elected to accelerate the payments due after defendant's refusal to make any of the required monthly payments. Thereafter, with no notice to defendant, plaintiff sent its agent to Bullhead City, Arizona, to

repossess the airplane. While plaintiff's agent was at the airport preparing to make arrangements to fly the airplane to California, Taylor appeared at the airport and discussed the situation with him. When Taylor objected to the repossession, the agent suggested that Taylor discuss the repossession with plaintiff's attorney in Oakland, which Taylor did on the telephone. Thereafter, Taylor's attitude changed decidedly, and he appeared agreeable to the repossession, handed the airplane keys to the agent, and discussed the flying of the plane with him. The agent then flew the plane back to Oakland. It was later sold by plaintiff at public auction to itself, and then resold for a somewhat higher price, but still substantially less than the balance due on the contract, resulting in the deficiency for which plaintiff seeks recovery in this action. Defendant did not demand any resale, nor did he appear or bid at the auction sale, of which he was given notice by plaintiff. The only payment made by defendant on the contract was his initial down payment, which was approximately 20% of the total cash purchase price.

The parties proceeded in the trial court on the basis that if California law applied and governed the rights of the parties with respect to the repossession, resale, and deficiency, the plaintiff was entitled to recover the amount of the deficiency together with a reasonable attorney's fee, and that defendants would not be entitled to recover on their counterclaim. The trial court determined that California law did govern the transaction and accordingly entered judgment for the plaintiff.

■ We believe the trial court was correct in its determination that California law is the proper law to apply to this transaction, in the absence of any choice of governing law by the parties. However, in our view, the decision of this matter need not be based on choice of law principles alone unless a different result would in fact obtain by the application of Arizona rather than California law. We do not think that is the case here.

■ If Arizona law is applicable, it is conceded that the Uniform Conditional Sales Act, A.R.S. §§ 44–301 to 44–330, (since repealed and replaced by the Uniform Commercial Code) governs this transaction entered into in 1967. Defendants contend that plaintiff failed to comply with § 44–318 [1] thereof by removing the airplane from Arizona to California immediately upon repossessing it. They then claim that under A.R.S. § 44–325 [2] they are entitled to recover damages of 25% of their down payment for this failure. There is no doubt from the evidence that the plaintiff did not comply with A.R.S. § 44–318 because it did remove the plane from Arizona, where it had been located, immediately upon retaking it, rather than retaining it in this State for ten days. However, this statute applies only in the absence of any notice under A.R.S. § 44–317.[3] The latter section

---

1. A.R.S. § 44–318 provided in part: "If the seller does not give the notice of intention to retake described in § 44–317, he shall retain the goods for ten days after the retaking within the state in which they were located when retaken . . . . ."

2. A.R.S. § 44–325 provided as follows: "If the seller fails to comply with the provisions of §§ 44–318, 44–319, 44–320, 44–321, and 44–323 after retaking the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one fourth of the sum of all payments which have been made under the contract, with interest."

3. A.R.S. § 44–317 provided as follows:

"Not more than forty nor less than twenty days prior to the retaking, the seller, if he so desires, may serve upon the buyer personally or by registered mail a written notice of intention to retake the goods on account of the buyer's default. The notice shall state the default and the period at the end of which the goods will be retaken, and shall briefly and clearly state what the buyer's rights under this chapter will be in case they are retaken. If the notice is so served and the buyer does not perform the obligations in which he has made default before the day set for retaking, the seller may retake the

provided for an optional notice to the buyer that the seller intends to retake the goods. No such notice was given here. However, the written notice described in A.R.S. § 44–317 could be waived, and if it is, the notice requirement of A.R.S. § 44–318 has been satisfied. In the annotation at 174 A.L.R. 1363, 1364 (1948), this rule is stated as follows:

> "Clearly, if a buyer voluntarily surrenders and delivers the property to the seller on demand . . . he waives any contractual or statutory right to notice and payment before repossession."

The only significance of the A.R.S. § 44–317 notice is with respect to the ten-day redemption period, the resale requirements being the same whether that notice is given or not, so that waiving the notice by knowingly surrendering the goods serves the same purpose as the written notice. In either event the burden would be on the buyer to initiate any redemption action he desired. The evidence here to the effect that the buyer agreed to the repossession and gave the plane keys to the seller's agent so he could fly it away indicates a waiver of the required notice, so that A.R.S. § 44–318 does not even apply here. There is no contention that any other provision of the Uniform Conditional Sales Act was not complied with, and therefore the plaintiff would be entitled to the judgment entered (except with respect to attorney's fees as discussed *infra*), even if Arizona law were to be applied.

■ We do base our decision, however, on the additional ground that the trial court correctly applied California law as the governing law in this matter. Our Supreme Court has frequently stated that in the absence of any controlling Arizona statute or decision the Restatement of the Law will be followed, Rodriquez v. Terry, 79 Ariz. 348, 290 P.2d 248 (1955), and this rule applies in the area of conflict of laws. Smith v. Normart, 51 Ariz. 134, 75 P.2d 38 (1938). In Burr v. Renewal Guaranty

Corp., 105 Ariz. 549, 468 P.2d 576 (1970), the Supreme Court adopted the Restatement rule as to conflict of laws in the area of usury, after pointing out that it had already approved the Restatement conflicts rules in tort cases. We have not been cited to any Arizona authorities specifically in point with this case, nor have we found any, and we therefore turn to the Restatement.

The Restatement of the Law, 2nd, Conflict of Laws, § 188, contains the basic rules on choice of law as to contract matters in general. We believe that this section controls this case. While there is a separate section (§ 254) relating specifically to the enforcement of security interests, comment *e* thereto indicates that issues other than those directly affecting interests in the property are governed by section 188. Furthermore, it would simply not be reasonable to apply the rule of section 254 to this case, as that would make Kansas law applicable simply because of the isolated fact that the airplane happened to be in that State at the time the security interest attached, and no one would seriously contend that this transaction should be governed by the otherwise completely unrelated law of that State.

■ Under Restatement section 188, the local law of the state having the most significant relationship to the transaction and the parties is the law to be applied, in the absence of an effective choice of law by the parties. In determining this relationship, the following contacts are to be taken into account:

> "(a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

goods and hold them subject to the provisions of §§ 44–319, 44–320, 44–321, 44–

322, and 44–323 regarding resale, but without any right of redemption."

These contacts are to be evaluated according to their relative importance with respect to the particular issue." Section 188(2).

However, if the place of negotiating the contract and the place of performance are in the same state, the local law of that state will generally be applied (subsection (3)). In this case, both the place of negotiation and the place of performance were in California, and since this case is not within any of the exceptions indicated in this Restatement rule, the law of California is the law to be applied. In our opinion, the place of contracting, the location of the airplane, and the domicile of the parties are nowhere near as significant as the place of performance in making this determination. After the receipt of the plane by the defendant Taylor, the only continuing aspect of this entire transaction was the required performance by him of his obligation to make monthly payments to the assignee in California. We think it is quite reasonable to apply California law to determine any issues relating to this required California performance, and to the failure to perform. Once this transaction had proceeded as far as it did, it became quite analogous to a simple contract for the repayment of money lent, and under section 195 of the Restatement such contracts are clearly governed by the local law of the state where the contract requires that repayment be made, which in this case was California. We therefore conclude that the trial court correctly applied California law and that plaintiff was entitled to the judgment entered for the deficiency, interest, and costs, and to the dismissal of defendants' counterclaim.

■ As to the award of attorney's fees, however, we have a different situation. While the parties have not briefed the question of choice of law with respect to this issue, our research indicates that different rules prevail in California[4] and Ari-

zona as to the requirement of evidence of reasonable value of attorney's fees. As to this issue, the local law of the forum is the applicable law under Restatement of the Law, 2nd, Conflict of Laws, §§ 122 and 135, and Arizona law will therefore be applied to determine the necessity for and sufficiency of evidence to establish the reasonable value of the attorney's fees sought.

■ The contract included an agreement by the buyer to pay a reasonable attorney's fee in the event of enforcement action, and under Arizona law this provision would have entitled plaintiff to recover such fee had it chosen to introduce any evidence as to what a reasonable fee would be in this case. However, plaintiff produced no evidence whatsoever as to the actual attorney's fees it had incurred or as to the amount of a reasonable fee under the circumstances. Under Arizona law the trial court has no authority to fix the amount of attorney's fees or to submit that issue to a jury in the absence of proof establishing what a reasonable fee would be. Crouch v. Pixler, 83 Ariz. 310, 320 P.2d 943 (1958); Concannon v. Yewell, 16 Ariz.App. 320, 493 P.2d 122 (1972); cf. Elson Development Co. v. Arizona Savings & L. Ass'n, 99 Ariz. 217, 407 P.2d 930 (1965). In other words, "an award of attorneys' fees must be based upon evidence as substantial as that necessary to sustain any other judgment." Crosby v. Smith, 13 Ariz.App. 243, 246, 475 P.2d 728, 731 (1970). No evidence at all was introduced here on this issue, and although the lack thereof was called to the attention of the trial court by the defendants, the court nevertheless fixed the amount of attorney's fees at $5,000 without stating any basis therefor. Under the above authorities this portion of the judgment cannot stand.

The judgment of the trial court is therefore affirmed in all respects except as to that portion thereof awarding the sum of $5,000 as attorney's fees; and that portion

---

4. See Frank v. Frank, 213 Cal.App.2d 135, 28 Cal.Rptr. 687 (1963); Clejan v. Reisman, 5 Cal.App.3d 224, 84 Cal.Rptr. 897 (1970); West's Annot.Calif.Civil Code § 1717 (1973).

thereof awarding said attorney's fees is reversed and vacated.

JACOBSON, C. J., Division 1, and HAIRE, J., concur.