601 P.2d 593

**Donald B. HOWARD and Betty Lou Howard, husband and wife, Appellants,**

v.

**ASSOCIATED GROCERS, Appellee.**

**No. 13949.**

Supreme Court of Arizona,
In Division.

Sept. 24, 1979.

Rehearing Denied Oct. 30, 1979.

Biaett & Bahde by Kenneth Biaett, Phoenix, for appellants.

Jennings, Strouss & Salmon by Gary G. Keltner, Phoenix, for appellee.

CAMERON, Chief Justice.

Defendant-appellants Donald B. Howard and Betty Lou Howard appeal from an order granting plaintiff-appellee's motion for summary judgment. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer only one question on appeal: Did the purchase agreement entered into between Associated Grocers and the temporary trustee in bankruptcy for Howard's Markets, Inc., operate to discharge the Howards from their continuing guarantee of the financial obligations of Howard's Markets, Inc., to Associated Grocers?

The facts necessary for the resolution of this appeal are not in dispute. Howard's Markets, Inc., owned and operated six grocery stores in Arizona. Donald B. Howard and Betty Lou Howard were the shareholders and officers in Howard's Markets, Inc. On 24 June 1971, the Howards executed a "Personal Continuing Guaranty" wherein they individually guaranteed the indebtedness and obligations of Howard's Markets, Inc., to Associated Grocers. The substance of the "Personal Continuing Guaranty" was as follows:

"We [the Howards] do hereby, jointly and severally, guarantee and promise and agree to make prompt payment to Associated * * * of any and all indebtedness, obligations or liabilities * * * of [Howard's Markets, Inc.] to Associated."

In November of 1975, a voluntary petition for bankruptcy was filed for and on behalf of Howard's Markets, Inc. At that time the net unpaid indebtedness of Howard's Markets, Inc., to Associated Grocers was $365,664.79.

Associated Grocers then entered into an agreement with the trustee in bankruptcy for the purchase of the inventory of the bankruptcy estate and to pay for said inventory the amount of the prebankruptcy indebtedness to Associated Grocers by How-

ard's Markets, Inc. In other words, Associated Grocers agreed to set off the amount owed to it by Howard's Markets, Inc., in return for the inventory of Howard's Markets, Inc. The value of the inventory was unknown, but it was agreed that if the inventory was worth more than $365,664.79, then the purchase price would not be increased to reflect the increased value of the inventory and Associated Grocers would not have to pay the difference. It was also agreed that if the value of the inventory was less than $365,664.79, the purchase price was to remain the same but that Associated Grocers would not make any claim against the bankruptcy estate for the balance. Associated was to receive a windfall if the inventory was worth more than $365,664.79 and was to suffer a loss if the value of the inventory was worth less than $365,664.79.

The portion of the agreement between Associated Grocers and the trustee in bankruptcy pertinent to this case and to which the Howards were not parties reads as follows:

"* * * [N]othing contained herein is intended or shall be construed to constitute a satisfaction or other discharge of Buyer's prebankruptcy claims against the Bankrupt or to constitute an assignment of Buyer's claims against DONALD B. HOWARD and BETTY LOU HOWARD, as Guarantors, on account of any portion of aforesaid pre-bankruptcy indebtedness of the Bankrupt and Seller shall not be entitled to any credit or be charged on account of any claim or demand of Buyer against said Guarantors; provided, however, Buyer covenants to indemnify the estate against and hold it harmless from any and all liability which it may have for payment of any dividend on account of the proof and filing of any such claim by Guarantors in Buyer's name."

Most of the material in the inventory, with the exception of dry goods in unbroken boxes, was valued at between 22% and 39% of the retail price. The inventory was, in fact, valued at $243,535.65 or $122,129.14 less than the total indebtedness of How-

ard's Markets to Associated. Associated sued the Howards for this amount. Both sides filed a motion for summary judgment. The trial court denied the Howards' motion and granted Associated's motion. Associated obtained a judgment against the Howards in the amount of $122,129.14, plus $13,-142 as and for attorney's fees and the Howards appealed.

The Howards argue that the provision of the sales agreement quoted above clearly indicated that the obligations of Howard's Markets, Inc., to Associated was satisfied and that therefore the obligation of the Howards under the continuing guarantee was also satisfied.

On the other hand, Associated Grocers argues that the agreement clearly indicated that no satisfaction of the debts was intended and that the Howards were not discharged from their obligation under the guarantee.

■ A guarantee is a promise to pay an obligation between a creditor and debtor. The guarantee contract is secondary or collateral to the principal contract, and unless the debtor himself is bound to pay, the guarantor is not bound. 38 Am.Jur.2d, Guaranty, § 51, p. 1054. If there is no obligation by the debtor, there is no obligation by the guarantor. *Dykes v. Clem Lumber Co.*, 58 Ariz. 176, 118 P.2d 454 (1941). The general rule is stated in 38 Am.Jr.2d, Guaranty, § 89, p. 1095:

"The guarantor is, as a general rule, released or discharged of liability where, by reason of some act or omission on the part of the creditor, the principal debtor has become discharged of his obligation by a rule of law. * * * " See also *Scottsdale Discount Corporation v. O'Brien*, 25 Ariz.App. 320, 543 P.2d 158 (1975).

And:

"It is, of course, a well-recognized principle of law that the release of a principal debtor without the consent of the guarantor releases the latter from his guaranty." *Commercial Credit Co. v. Phoenix Hudson-Essex, Inc.*, 33 Ariz. 56, 59, 262 P. 1, 2 (1927).

■ In the instant case, as between the debtor Howard's Markets, Inc., and the creditor Associated, the debt has been completely extinguished. Whether labeled satisfaction, covenant not to sue or whatever, Associated Grocers no longer has any claim against Howard's Markets, Inc. The discharge of Howard's Markets, Inc., obligation to Associated without the consent of the Howards discharged the obligation of the Howards as guarantors.

Associated, however, contends that the above cited provision was not a satisfaction of the debt but merely a covenant not to sue and cites previous cases in this court wherein we have held that a covenant not to sue is not a release of liability for tort. *Fagerberg v. Phoenix Flour Mills Company*, 50 Ariz. 227, 71 P.2d 1022 (1937); *Hovatter v. Shell Oil Co.*, 111 Ariz. 325, 529 P.2d 224 (1974); *Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 571 P.2d 699 (App.1977). Associated particularly points out those cases in which we have held that the release of one tortfeasor does not automatically release others. *Adams v. Dion*, 109 Ariz. 308, 509 P.2d 201 (1973); *Anderson Aviation Sales Co., Inc. v. Perez*, 19 Ariz.App. 422, 508 P.2d 87 (1973).

Whatever may be the rule in tort law, it does not follow that the same provisions will be applicable in commercial law. The law of commerce is that release of the principal debtor without the consent of the guarantor releases the guarantor. *Commercial Credit Company*, supra. The provision of the sales agreement in question was a release, and the Howards, as guarantors, were also released from any obligation under their guarantee.

Associated further argues, however, that the Howards, by the terms of their personal guaranty, consented to remain liable to Associated notwithstanding any release by Associated of Howard's Markets. In their guaranty, the Howards bound themselves

"jointly and severally, for the payment of any such debts, liabilities or obligations of [Howard's Markets] precisely the same as if the same has been contracted and was

**596**

due and owing by the undersigned, or any or all of them, in person * * *."

and agreed

"that this is an unconditional guaranty and that it shall continue in full force and effect until surrendered and delivered to [the Howards] or until a revocation of this Continuing Guaranty shall be signed by the undersigned and said revocation accepted in writing by ASSOCIATED * * *."

Associated contends that this language creates an independent agreement by the Howards to maintain the obligation regardless of the release of Howard's Markets. This court in *Maestro Music, Inc. v. Rudolph Wurlitzer Co.*, 88 Ariz. 222, 354 P.2d 266 (1960), held such an agreement binding. In that case, the debtor was released by operation of law due to the conduct of the creditor. We held that the release of the debtor would have effectively released the guarantor but for the guarantor's specific agreement to be liable for the debtor's obligation even if the creditor did "release any and all rights against * * * [the debtor]." 88 Ariz. at 230, 354 P.2d at 271. By such a clause, the guarantor waived discharge by release of the principal debtor and remained liable for the debtor's obligation. See *Inland Credit Corp. v. Weiss*, 63 A.D.2d 640, 405 N.Y.S.2d 258 (1978).

■ We believe the two cases are distinguishable. In the instant case, by the quoted terms of the guaranty, the Howards do not agree to remain liable after a release of Howard's Markets. The Howards merely agreed to guarantee unconditionally the payment of the obligations of Howard's Markets to Associated. In the absence of a specific agreement to remain liable, the reliance on *Maestro*, supra, is unwarranted. See *Scottsdale Discount Corporation*, supra; *Stevens v. Southwestern Investment Co.*, 1 Ariz.App. 88, 399 P.2d 709 (1965).

There being no obligation to Associated, the Howards are not required to pay attorney's fees.

Reversed and remanded for further proceedings consistent with this opinion.

HAYS and GORDON, JJ., concur.