725 P.2d 761

**H. William MOTT and Kathy P. Mott, husband and wife, Plaintiffs/Appellees,**

v.

**William EDDINS and Janet M. Eddins, husband and wife, Defendants/Appellants.**

**No. 2 CA–CIV 5688.**

Court of Appeals of Arizona, Division 2, Department A.

June 25, 1986.

Review Denied Sept. 23, 1986.

Miller & Pitt, P.C. by John A. Baade and Anne M. Ryan, Tucson, for plaintiffs/appellees.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr. and Jon Rothschild, Tucson, for defendants/appellants.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from a summary judgment in a breach of contract action involving the sale of a residence in Tucson, Arizona. At the time the events which are the subject of this litigation took place, William and Janet Eddins were domiciled in California but were planning to move to Tucson, which they did in 1983. Mr. Eddins, who had conducted a majority of his business activity in Tucson since 1978, came to Tucson and signed a deposit receipt and agreement wherein he agreed to buy the house owned by the Motts, who were domiciled in Arizona. "Mr. Eddins and/or assigns" were indicated on the contract as purchaser; Mrs. Eddins never signed the contract. Subsequently, Mr. Eddins refused to close the transaction, the Eddinses did not at that time move to Arizona, and the property was sold to someone else for a lesser amount. The Motts then brought this action for damages for breach of contract.

Both parties moved for summary judgment. The trial court held that California law governed, that the contract was enforceable against the Eddinses, and that the Motts were entitled to a judgment against the Eddinses in the sum of $81,-408.57 together with attorney's fees and costs.

In Arizona both spouses must join in any transaction for the acquisition of real property. A.R.S. § 25–214(C). In California, however, there is no such requirement for the *acquisition* of real estate. See Cal. Civil Code § 5127 (West 1983). The Eddinses contend that the trial court erred in applying California law and that the judgment against the community should be reversed and judgment entered only against Mr. Eddins.

There being no Arizona statutes or decisions controlling the issue presented, we turn to the Restatement of the Law. *Taylor v. Security National Bank*, 20 Ariz. App. 504, 514 P.2d 257 (1973). Restatement (Second) of Conflict of Laws § 189 (1971), states:

"The validity of a contract for the transfer of an interest in land and the rights created thereby are determined, in the absence of an effective choice of law

by the parties, by the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

Section 6 of the Restatement provides:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

The rationale behind § 189 is set forth in Comment c:

"In the absence of an effective choice of law by the parties ... the rule of this Section calls for application of the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship to the contract and the parties. Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6....

Several factors serve to explain the importance attributed by the rule to the location of the land. The state where the land is situated will have a natural interest in transactions affecting it, particularly in view of the fact that land by its nature is immovable. Also, since in the situations covered by the rule the land constitutes the subject matter of the contract, it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the land is situated would be applied to determine many of the issues arising under the contract. The rule furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the land is situated will be readily ascertainable, of ease in the determination of the applicable law."

Comment d to § 189 is also of particular importance here. It states:

"d. When local law of state where land is situated will not be applied. On occasion, a state which is not the situs of the land will nevertheless, with respect to the particular issue, be the state of most significant relationship to the transaction and the parties and hence the state of the applicable law. This may be so, for example, when the contract would be invalid under the local law of the state where the land is situated but valid under the local law of another state with a close relation to the transaction and the parties. In such a situation, the local law of the other state should be applied unless the value of protecting the expectations of the parties is outweighed in the particular case by the interest of the state where the land is situated in having its invalidating rule applied. There will also be occasions when the local law of some state other than that where the land is situated should be applied in any event because of the intensity of the interest of that state in having its local law applied to determine the particular issue...."

The only connection that California had with this case was that the Eddinses were domiciled in California. The Motts were domiciled in Arizona, the contract was executed in Arizona, and was to be performed in Arizona. In fact, the Eddinses were planning to change their domicile to Arizona. California had no "close relation to the transaction," as set forth in Comment d to

§ 189, supra, which would cause us to look to the laws of California in this case.

The judgment is reversed and the case is remanded to the trial court with instructions to enter judgment in favor of the community consisting of William Eddins and Janet E. Eddins and against the Motts. The court is further instructed to enter judgment in favor of the Motts and against William Eddins, individually.

HATHAWAY, C.J., and FERNANDEZ, J., concur.