785 P.2d 1215

PHOENIX ARBOR PLAZA, LTD., a California limited partnership, Plaintiff–Appellant, Cross–Appellee,

v.

Jerry L. DAUDERMAN and Roberta Dauderman, husband and wife, Defendants, Cross–Appellants,

Roberta Dauderman, Defendant–Appellee.

Nos. 1 CA–CV 88–165, 1 CA–CV 88–191.

Court of Appeals of Arizona, Division 1, Department C.

July 18, 1989.

Review Denied Dec. 12, 1989.

Harrison, Harper, Christian & Dichter, P.C. by Thomas F. Harper, Phoenix, for plaintiff-appellant, cross-appellee.

Carmichael & Powell, P.C. by Claudia J. Kroman, Phoenix, for defendants, cross-appellants and defendant-appellee.

## OPINION

CLABORNE, Judge.

This appeal invites us to examine a choice of law issue concerning the liability of a California spouse who failed to sign a guarantee executed in Arizona securing the performance of the terms of an Arizona

lease of Arizona property. The sole issue on appeal is whether the trial court erred in applying Arizona law to determine the liability of a California guarantor's spouse and the California marital community property.

We find no error and affirm.

An Arizona partnership, Nautilus Plus, leased space in an Arizona shopping center from Northwest Associates Limited Partnership (Northwest). Gordon Hall and Jerry Dauderman executed personal guarantees of performance of the lease by Nautilus Plus. Each guarantee was appended as an exhibit to the lease document between Nautilus Plus and Northwest. At the time of the execution of the lease and the guarantees, Jerry L. Dauderman and his wife, Roberta, were residents of California. In 1985 Northwest sold the Arizona shopping center to Phoenix Arbor Plaza, Ltd. (appellant) and assigned the lease agreement and the guarantees to the appellant. A default for failure to pay rent under the lease agreement occurred after October 1985.

On April 30, 1986, appellant filed a complaint against Gordon and Dolores Hall, husband and wife, and Jerry L. and Roberta Dauderman, husband and wife, seeking to enforce each guarantee. Roberta Dauderman (Roberta) moved for summary judgment. She claimed that since she did not personally sign the guarantee, neither she personally nor the community property of the Daudermans could be liable under Arizona law. Appellant responded, arguing that because the Daudermans were residents of California, California law should apply. California law would subject Roberta and the Dauderman community property to liability under the guarantee.

The trial court granted summary judgment in favor of Roberta, dismissed the complaint against her and awarded her costs and attorney's fees. The remaining issues went to trial, the trial court found in favor of appellant and against Gordon Hall and Jerry Dauderman. After the final judgment was lodged, the Daudermans unsuccessfully objected to the form of judgment.

Appellant filed a notice of appeal from the portion of the judgment dismissing the complaint with prejudice as to Roberta and awarding her attorney's fees. The Daudermans filed a notice of appeal from the order denying their objection to the form of the judgment. At the time of oral argument, the appellant took the position that this court's recent opinion in *Lorenz–Auxier Financial Group, Inc. v. Bidewell*, 772 P.2d 41 (App.1989) controlled the issue and that we should reverse on that basis.

## ARIZONA LAW GOVERNS THE RIGHTS AND LIABILITIES OF THE PARTIES TO THE GUARANTEE

The parties acknowledge there is no factual dispute and the question is which law should govern the rights of the parties. They agree that if Arizona law applies, Roberta and the Daudermans' community assets are not liable for the guarantee executed by Jerry L. Dauderman. *See* A.R.S. § 25–214(C); *Consolidated Roofing & Supply Co., Inc. v. Grimm*, 140 Ariz. 452, 457–58, 682 P.2d 457, 462–63 (App.1984). If California law applies, Roberta and the Daudermans' community assets are liable. *See* Cal.Civil Code § 5120.110(a) (West 1983).

The trial judge expressed two reasons for choosing Arizona law. First, he felt the lease gave weight to the provision of the lease which specified that it was to be construed according to the laws of the State of Arizona. Second, the judge reasoned as follows:

Even if there were no choice of law provision, the court is of the opinion that, applying traditional conflicts of law principals [sic] Arizona is the state with the most significant relationship to the guarantee issue. Where the landlord is located in Arizona, and where the contract was negotiated, executed and performed in the state, it is appropriate, in order to promote uniformity and consistency, to apply Arizona law.

The trial court's first reason was in error. The guarantees of Dauderman and Hall were separate documents and were attached to the lease agreement as

exhibits. Although each party pointed to the lease as evidence of which law should apply to the guarantee, it is clear that each document described the duties and obligations of different people. The lease dealt with duties and obligations of landlord and tenant. The guarantees dealt with the undertakings of the guarantors. These contracts involved completely different parties. The lease was between Northwest and Nautilus Plus. The guarantee was between Northwest and Jerry Dauderman. A guarantee is a contract secondary or collateral to the principal contractual obligations which it guarantees. *See Howard v. Associated Grocers*, 123 Ariz. 593, 595, 601 P.2d 593, 595 (1979). We therefore conclude that the choice of law provision in the lease is not part of the guarantee and, therefore, is not controlling. In any event, the choice of law provision would not be binding on Roberta because she did not sign the lease. *Lorenz–Auxier Financial Group, Inc. v. Bidewell*, at 44.

We commence the examination of Roberta's liability and its effect on the Dauderman marital community property. In examining whether Roberta's liability should be decided according to California or Arizona law, we will look to the pronouncements of the Arizona courts and to the Restatement (Second) Conflict of Laws. Restatement (Second) of Conflict of Laws §§ 6, 194 (1971).

■ Arizona has generally taken the position that if a contract is executed and performed in Arizona, Arizona law applies. *See Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 735 P.2d 1373 (App.1987); *Taylor v. Security National Bank*, 20 Ariz. App. 504, 514 P.2d 257 (1973). This general view is consistent with the Restatement (Second) of Conflict of Laws § 194 concerning surety (or guarantee) agreements.

Section 194 provides:
The validity of a contract of suretyship and the rights created thereby are determined ... by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant

relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
Restatement (Second) of Conflict of Laws § 194 (1971). The comment to this section explains the rationale behind the general principle:
In the absence of an effective choice of law by the parties, the validity of the suretyship contract and the rights created thereby will usually be determined by the law which governs the principal obligation. In the nature of things, the two contracts will usually be closely related and have many common elements. Particularly when the two contracts are contained in the same instrument or when both were made at around the same time, application of ordinary choice-of-law rules (see § 188) will frequently lead to a decision that both contracts are governed by the same law. Such a conclusion is likewise dictated by considerations of practicality and convenience. In addition, the contract of suretyship can often be considered accessory, or subsidiary, to the principal obligation. In situations where there are several sureties and several contracts of suretyship, the convenience of having all these contracts determined by the law which governs the principal obligation becomes even more apparent.
Restatement (Second) of Conflict of Laws § 194 comment (a) (1971).

Appellant has argued that there is a difference between suretyship and guarantee. While there may be differences between these two types of contracts, that distinction is not important when dealing with choice of law problems. Comment (a) to § 194 makes it clear that the Restatement includes "guaranty" in "suretyship" and that there has never been agreement as to whether such a distinction exists at all.

■ Comment (c) to § 194 describes certain relationships where the law governing the principal obligation should not be applied to the guarantee. It then identifies four relationships, any one of which would be sufficient to apply the law governing

the underlying obligation to the guarantee. These relationships exist where the state whose local law governs the underlying obligation was also

(1) [T]he state where the creditor extended credit to the principal or otherwise relied upon the surety's promise, unless the surety had not authorized the principal to seek credit or other performance in that state and the creditor had reason to know of this lack of authority, or (2) the state where the contract of suretyship was to be performed, or (3) the state where the negotiations between the surety and creditor were conducted or where the surety delivered the contract to the creditor, or (4) the state of domicil of either the creditor or the surety....

Restatement (Second) of Conflict of Laws § 194 comment (c) (1971). All four of these factors are present in the instant case.

Arizona was the place of the execution, negotiation and performance of the contract and the site of the leasehold underlying the guarantee. Although appellant is a California partnership, its predecessor, Northwest, the original landlord and party to the guarantee, was an Arizona partnership. The only connection that California had with the transaction at the time it was executed was that the Daudermans were residents of California.

When it appears that the non-signing spouse's property rights are not restricted by the laws of the non-domiciliary state, the general principles set forth in § 194 would apply as well as those in § 6. The § 6 factors are:

(a) The needs of the interstate and international systems,

(b) The relevant policies of the forum,

(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) The protection of justified expectations,

(e) The basic policies underlying the particular field of law,

(f) Certainty, predictability and uniformity of result, and

(g) Ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The trial judge applied these factors to this case, and we do not disagree with his analysis. *See also Mott v. Eddins,* 151 Ariz. 54, 725 P.2d 761 (App.1986).

The appellant maintains, however, that when dealing with community property in one state involving a transaction conducted in another state the courts uniformly apply the law of the marital domicile. Furthermore, appellant argues, *Lorenz–Auxier Financial Group v. Bidewell,* 772 P.2d 41 (1989) is dispositive.

In *Lorenz–Auxier,* an Oregon husband came to Arizona and individually executed a debt-creating agreement. The Oregon wife did not agree nor sign the obligation created by her husband. Oregon was not a community property state. If Oregon law applied neither the wife nor her separate property was liable for the obligation incurred unilaterally by the Oregon husband. If, on the other hand, Arizona property law applied, then the wife as well as the Oregon marital unit would be subject to Arizona community property law. The wife was sued for the debt in Arizona along with her husband. The trial court applied Arizona law, the wife appealed, and this court reversed as to her and remanded the action to the trial court for further proceedings. *Id.* at 45. *Lorenz–Auxier* acknowledged that property rights of a husband and wife are governed by the law of the couple's matrimonial domicile site. *Id.* at 44. Put another way, whether property acquired during marriage is community property, separate property of the husband subject to a wife's dower interest, tenants in common, etc., is decided by the state of matrimonial residence. Normally, then, the court would look to Oregon law to decide the wife's liability. However, the creditor claimed that Arizona law applied because the husband had agreed that it would. The court responded:

Mrs. Bidewell correctly argues, however, that this provision does not bind her, as she was not a party to the leases, made no personal choice of law, and could not

be bound by the terms, including the choice of law terms, of contracts she did not sign.

We find no authority in Arizona or Oregon that permits one spouse, acting extraterritorially without the other spouse's consent, to enlarge his dispositional power over the other spouse's property beyond the limits imposed by the law of the domiciliary state. O.R.S. § 108.020 states that spouses "are not liable for the separate debts of each other." O.R.S. § 108.050 states that none of the wife's "real or personal property acquired by her own labor during coverture, shall ... be subject to the debts or contracts of her husband." Mrs. Bidewell obtained a measure of protection through these statutes that her husband could not unilaterally sign away. Her husband may have agreed that *he* would be bound by Arizona law, but he did not thereby bind his wife.

Were we to accept Lorenz–Auxier's position, one spouse could alter the rights and liabilities of his marital community, irrespective of the protective policies of the state of domicile, by simply choosing to contract in another forum and by contractually consenting to the application of that forum's laws. *One spouse, for example, could defeat Arizona's protective requirement that both spouses must consent when binding community property to guarantee a third party's obligation, A.R.S. § 25–214(C)(2); the would-be guarantor would need only to transact a guarantee in a state that lacked such protection ... to include [an agreement] submitting to the latter state's laws.*

*Id.* at 43–44 (emphasis added). All that *Lorenz–Auxier* did was to refuse to enforce a unilateral promise by the husband to bind his wife to a promise which would jeopardize property rights provided by her state of domicile. *Id.* at 44–45.

In this case, Roberta's California community property rights were not *restricted, reduced,* or *jeopardized* by her husband's unilateral guarantee. If anything, the application of Arizona law expanded her community property right protection. Applying Arizona law restricts the Arizona creditor in a way he would not be restricted if California law applied. Under the circumstances, then, it makes sense to apply § 6 and § 194 to this issue. Summary judgment was properly entered in favor of Roberta Dauderman and the marital community.*

## THE CROSS–APPEAL AND THE FORM OF JUDGMENT

On August 12, 1987, the trial court entered a formal judgment granting defendant's motion for summary judgment, dismissing Roberta Dauderman with prejudice and providing that:

Pursuant to A.R.S. § 25–214(C), any Judgment obtained against JERRY DAUDERMAN on the guarantee of lease shall be against his sole and separate property alone and not against the marital community property of JERRY DAUDERMAN and ROBERTA DAUDERMAN.

The judgment did not contain Rule 54(b) language making it a final and appealable judgment.

The final judgment entered on January 29, 1988, grants judgment against Gordon L. Hall and Jerry L. Dauderman, jointly and severally, and orders that the complaint against Roberta Dauderman is dismissed with prejudice. It does not contain the language of the August 12, 1987 judgment, but states:

It is further ordered, that this judgment disposes of all claims as to all parties in this litigation, and the clerk is directed to enter this judgment forthwith.

---

* Judge Voss' special concurrence suggests a "two-step process" using *Lorenz–Auxier* and the Restatement. This suggestion is simple misconstruction. We construe *Lorenz–Auxier* narrowly on its facts. It makes no sense to allow a spouse to jeopardize the other spouse's property rights by going to another state and making a unilateral guarantee affecting that property. This in no way affects the Restatement tests.

The Daudermans filed an objection to the form of the January 29, 1988 judgment because it failed to contain the language of the August 12, 1987 judgment.

Apparently the Daudermans' concern with the failure to include paragraph 4 relates to the enforceability of the judgment in California. They point out that Arizona and California laws differ as to how judgments are enforced against a marital community.

■ In Arizona, under A.R.S. § 25–215(D), joinder of spouses is required to execute on community property. In California, however, community property is subject to execution even if only one spouse is sued or if judgment is obtained against one spouse alone. *See* Cal.Civil Code § 5120.110 (West 1983). Under conflict of laws principles, a judgment is enforced according to its terms, not only in the state rendering the judgment but in all other sister states. *See* Restatement (Second) of Conflict of Laws § 102 (1971). Because the court's order of summary judgment directed that liability would not be against the marital property of the Daudermans, the Daudermans contend that this order should have been included in the final judgment so as to make it unambiguously clear that the Arizona judgment would be enforced in the State of California in the same manner as if it were being enforced in the State of Arizona, i.e. that the Daudermans' community property would not be subject to execution.

The Daudermans concede that they have found no specific authority on this point and we have found no case directly on point. One authority has suggested that once having made a determination final for res judicata purposes, that decision must be reentered or included in a final judgment. *See* 6 *J. Moore Federal Practice*, § 54.28[2] (2d ed. 1988). In this case, there is a separate judgment which became final when the January 29, 1988 judgment was entered.

■ We are of the opinion that it would have been appropriate for the trial court to have included the language of paragraph 4 of the earlier judgment in the January 29,

1988, judgment in order to avoid the potential ambiguity that may arise upon an attempt to enforce the judgment in California. However, the record does not indicate whether the argument was raised. Further, because the January 29, 1988 judgment makes the August 12, 1987 judgment final, the Daudermans have the earlier judgment to clarify any ambiguity with respect to enforcement should it become an issue. We therefore find no abuse of discretion and affirm the judgment.

SHELLEY, P.J., concurs.

VOSS, Judge, specially concurring:

I agree with the result reached by the majority, but not the attempt to reconcile Arizona case law and the Restatement (Second) of Conflict of Laws with the holding in *Lorenz–Auxier Financial Group Inc. v. Bidewell*, 772 P.2d 41 (App.1989).

In *Lorenz–Auxier*, Mr. Bidewell, an Oregon domiciliary, contracted personally to purchase telephone systems; Mr. Bidewell's wife, also an Oregon domiciliary, did not sign the contracts. The contracts were executed and were to be performed in Arizona. At the time the contracts were executed, the Bidewells resided in Oregon. When the Bidewells were sued for non-payment on the contracts, they no longer lived in Oregon.

Without citing authority, the court in *Lorenz–Auxier* began its analysis with the following:

> Because, at all times relevant to this case, the Bidewells resided in Oregon, a non-community property state, we would ordinarily look to the law of Oregon to decide Mrs. Bidewell's susceptibility to judgment on this debt.

*Id.* at 44.

This statement forecasts the holding in *Lorenz–Auxier* and the statement, like the holding, is wrong.

In *Lorenz–Auxier* the court holds, without discussing the Restatement (Second) of Conflict of Laws, that courts should apply the law of the state of matrimonial domicile, when to do otherwise would defeat

marital property protections provided by the law of the marital domicile. *Id.* at 45. Citing Oregon authority, the court states: "Mrs. Bidewell obtained a measure of protection through these statutes that her husband could not unilaterally sign away." *Id.* Therefore, under *Lorenz–Auxier*, when suit is brought in Arizona naming several domiciliaries of other states, the trial court would be required to evaluate the marital property law of each out-of-state participant to determine if the application of Arizona law would negatively affect the protection provided marital property in those states. Because marital property law varies dramatically among many states, the result could be a different choice of law from party to party. This result is antithetical to the purpose of conflicts resolution, i.e., it is more practical and convenient to determine rights and obligations of several parties under the same law. Restatement (Second) of Conflict of Laws § 194, comment (b).

The majority arguably establishes a new two-step process using *Lorenz–Auxier* and the Restatement. First, apply the *Lorenz–Auxier* test. If the out-of-state non-signing marital partner's property rights are "restricted, reduced, or jeopardized" by the signing party's acts in Arizona, apply the law of the marital domicile. If not, "it makes sense" to apply the Restatement. I respectfully submit that deleting the first step is the appropriate approach to a consistent resolution of a conflicts case.

As stated by the majority, Arizona has generally taken the position that if a contract is executed and performed in Arizona, Arizona law applies. This is consistent with the Restatement (Second) of Conflict of Laws, §§ 188 and 194. The underlying principle of the Restatement is to choose the law of the state with the most significant relationship to the occurrence and the parties. See Restatement (Second) of Conflict of Laws, introduction at vii-viii (1971).

In *Mott v. Eddins*, 151 Ariz. 54, 725 P.2d 761 (App.1986), Division II of this court considered whether a contract for the sale of realty signed only by the husband was enforceable against the community. At the time the husband executed the contract, the husband and wife were domiciled in California. This court held that Arizona law applied. In reaching its decision, the court analyzed the transaction under the principles of the Restatement and concluded that Arizona had the most significant relationship to the transaction because the land was located in Arizona, the contract was executed in Arizona, and the contract was to be performed in Arizona. The only connection California had with the transaction was that one party to the contract was a California resident. The same analysis is applicable to the instant case.

I concur with the majority that Arizona law was applicable to the guarantee in this case and that the trial court properly entered summary judgment. I respectfully disagree, however, with the inclusion of the *Lorenz–Auxier* test as a proper step in reaching the result.