NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAPOUR D.C. ONE, LLC,
*Plaintiff/Appellee,*

v.

CENTRAL STATE SHINGLE RECYCLING, LLC, et al.,
*Defendants/Appellees.*

v.

JASON MCCULLAR AND MINDY MCCULLAR,
*Defendants/Appellants.*

No. 1 CA-CV 21-0578
FILED 8-30-2022

Appeal from the Superior Court in Maricopa County
No.  CV2018-052699
The Honorable Sara J. Agne, Judge

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Shein Phanse Adkins, PC, Scottsdale
By David E. Shein, Erik Daniel Smith
*Counsel for Plaintiff/Appellee*

Lang & Klain, PC, Scottsdale
By Michael Walter Thal, George H. King, Mickell J. Summerhays
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Defendant Jason McCullar appeals from the superior court's entry of partial summary judgment in favor of LaPour DC One, LLC ("Landlord") for breach of a lease guaranty, and its ruling that McCullar is jointly and severally liable for a $10 million judgment.  For the reasons set forth below, we affirm in part and reverse in part.[1]

### FACTS AND PROCEDURAL BACKGROUND

*First Lease*

**¶2**        In February 2011, Yelton Contracting ("Tenant A") leased ten acres of commercial land from Landlord in north Phoenix.  Scott Yelton owned Tenant A, also known as Central State Shingle Recycling.

**¶3**        Landlord and Tenant A entered a simple one-year lease agreement ("First Lease"), which provided that Tenant A "shall use the Premises for **recycling of roofing shingles**," ensuring "compliance with all" laws and administrative regulations.  Tenant A agreed to keep the Premises "in good repair," and to "surrender the Premises to Landlord in the same condition as received, broom-clean."  Shane Fellers, Tenant A's employee, signed the First Lease for Tenant A.

*Second Lease and Personal Guaranty from Yelton*

**¶4**        A year later, Landlord entered a second one-year lease agreement ("Second Lease") with Tenant A for the "agreed use [of] [s]hingle storage and recycling."  Again, Tenant A promised to comply with all laws and regulations, to "surrender the Premises to Landlord in the same condition as received," and to perform "any environmental clean up that

---

[1]        Although listed as a party on appeal, Mindy McCullar has not appeared or filed anything, and the marital community is not responsible for a "personal guaranty" absent both spouses' signatures. *See* A.R.S. § 25-214(C); A.R.S. § 25-215(D).  We only discuss Jason McCullar.

may be required." Scott Yelton signed the Second Lease as Tenant A's CEO and sole owner.

¶5        This time, Landlord also required Yelton to sign a separate "Guaranty of Lease" agreement ("Yelton Guaranty"), which promised to "guarantee the performance of [the] lease," and to "jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Lessee of all rents and other sums payable by Lessee under the [Second Lease] and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of [the Second Lease]." Yelton signed as "Guarantor[]."

*2014 Addendum to First Lease*

¶6        More than two years later, Landlord and Tenant A entered an Addendum ("2014 Addendum"), which (1) "reinstated" the First Lease for twenty months, and (2) "added" a second tenant "to the Lease" named JML Energy Resources ("Tenant B"). Tenant B was owned by Yelton and Jason McCullar's business. By this time, Tenant A had merged into Tenant B.

¶7        Landlord again required a personal guaranty, so the 2014 Addendum stated that "Jason McCullar and Scott Yelton shall personally guarantee the Lease." Yelton and McCullar both signed the 2014 Addendum. McCullar's signature is shown in this screenshot:



*2016 Amendment to First and Second Lease*

¶8        Tenant A, Tenant B and Landlord entered a written Amendment in December 2016 to the First Lease and Second Lease. The 2016 Amendment stated that the Tenants must either "resume recycling the asphalt shingles" at the premises or pay Landlord monetary penalties. But "all other terms" of the First Lease and Second Lease "remain[ed] in full force and effect." Only McCullar signed for Tenant B. His signature is undated.

*This Lawsuit*

¶9        Landlord sued Tenant A and Tenant B in 2018, asserting several claims, including breach of contract and breach of good faith and

fair dealing. Landlord alleged that Tenants did not pay rent, keep the premises in good repair, return the property in the condition it was received, or meet all applicable laws and regulations. Landlord requested $7 million in remediation costs, along with unpaid rent, punitive damages and attorney fees. What is more, Landlord sued Yelton and McCullar personally for breaching the guaranty in the lease agreement.

¶10 A default judgment was entered against Tenant B, and we affirmed that judgment on appeal, but remanded to determine the amount of damages. *See LaPour DC One LLC v. JML Energy Res. LLC*, 2020 WL 897732 (Ariz. App. Feb. 25, 2020). The superior court entered a final judgment against Tenant B for more than $10 million. Tenant B did not appeal.

¶11 Landlord then moved for summary judgment on its contract claims against Tenant A, and its breach of guaranty claims against Yelton and McCullar. In support, Landlord offered: (1) the lease documents, (2) a pair of 2018 declarations from McCullar and Yelton about remediating the property, (3) McCullar's emails from July 2016, when he confirmed he "signed the updated lease with a personal guarantee," adding he did not "take that lightly," and (4) assorted documents on environmental violations. McCullar, Yelton and Tenant A responded pro se, admitting they left more than 200,000 tons of asphalt roofing shingles on the premises, but arguing the Landlord gave permission. At oral argument, McCullar also challenged the personal guarantee clause in the 2014 Addendum as "incredibly ambiguous."

¶12 After oral argument, the superior court granted partial summary judgment to Landlord on its breach of contract and breach of guaranty claims, and awarded damages of $10,697,403, plus attorney fees and costs. It ruled that (1) Tenant A breached the lease agreement, (2) Yelton and McCullar personally guaranteed the lease agreement, and (3) Yelton and McCullar were liable for Tenant B's default judgment. Finding no just reason for delay, the court entered judgment under Arizona Rule of Civil Procedure ("Rule") 54(b).

¶13 McCullar timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶14 We review de novo the superior court's grant of summary judgment, *Jackson v. Eagle KMC LLC*, 245 Ariz. 544, 545, ¶ 7 (2019), construing the facts in the light most favorable to the non-moving party,

*Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). Summary judgment is appropriate only if "the moving party shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We also interpret contracts de novo. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 219, ¶ 5 (App. 2002).

## I. Burden of Proof

**¶15** A plaintiff who moves for summary judgment on its breach of contract claims must prove each element of the claim with "undisputed admissible evidence that would compel any reasonable juror to find in its favor," and "the mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff to judgment." *Wells Fargo Bank*, 231 Ariz. at 211, 213, ¶¶ 16-18 (citation omitted).

**¶16** McCullar argues that he never bore the burden of proof here because Landlord relied on "uniformly inadmissible" evidence, "consisting of unauthenticated, hearsay documents." We disagree. Landlord met its initial burden to show a contract, breach and damage. *See First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353, ¶ 22 (2016). At summary judgment, Landlord offered (1) signed copies of the First Lease, Second Lease, 2014 Addendum, and 2016 Amendment; (2) three emails in which McCullar confessed the Tenants had not paid the rent, promised to do so, and conceded that he "signed the updated lease with a personal guarantee"; and (3) McCullar's responsive statement of facts at summary judgment, which confessed the Tenants returned the premises with 200,000 tons of concrete debris.

**¶17** McCullar was then required to come forward with evidence creating a genuine issue of material fact as to his liability under the lease and guarantee. *See* Ariz. R. Civ. P. 56(e). Like the superior court, we conclude he did not. Aside from his unsupported conclusions and self-serving denials, McCullar offered no evidence to rebut Landlord's evidence. He offered no evidence about the capacity of his signature on the 2014 Addendum, and no evidence that Landlord authorized him to abandon the debris. Summary judgment was appropriate. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 5–6 (App. 1990).

## II. Contract Interpretation

**¶18** McCullar contends that summary judgment was improper because the 2014 Addendum was ambiguous.

**¶19**        Arizona courts interpret contracts "according to their plain and ordinary meaning," *First Am. Title Ins. Co.*, 239 Ariz. at 350, ¶ 8, looking to determine and implement the parties' intent, *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). We glean the meaning "from the whole contract," *Climate Control, Inc. v. Hill*, 86 Ariz. 180, 188 (1959), aspiring to "reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous," *Terrell v. Torres*, 248 Ariz. 47, 50, ¶ 14 (2020).

## A.        Existence of personal guarantee

**¶20**        McCullar argues the court should not have granted summary judgment on the guarantee claim because he only signed the 2014 Addendum as "Lessee/Tenant," and not in his individual capacity. We are not persuaded.

**¶21**        First, McCullar signed the 2014 Addendum as "Lessee/Tenant" and "Jason Mc[C]ullar." A defendant's unsupported, self-serving denials are not competent evidence to defeat summary judgment. *Florez v. Sargeant,* 185 Ariz. 521, 526 (1996) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.").

**¶22**        Second, we must interpret the 2014 Addendum as a whole, bringing harmony to its terms, careful not to render them meaningless. *See Provident Nat'l Assur. Co. v. Sbrocca*, 180 Ariz. 464, 465-66 (App. 1994); *Climate Control, Inc.*, 86 Ariz. at 189 ("A clause in a contract, if taken by itself, often admits of two meanings, when from the whole contract there is no reasonable doubt as to the sense in which the parties use it."). The 2014 Addendum stated that "Jason McCullar and Scott Yelton shall personally guaranty the Lease." The record shows that Landlord refused to "reinstate" the First Lease unless personally guaranteed by McCullar and Yelton. If accepted, McCullar's preferred interpretation "would render the guaranty substantially meaningless and valueless from the standpoint of the entire collateral package bargained for by plaintiff." *Sbrocca*, 180 Ariz. at 466 (quoting *First Interstate Bank v. Colcott*, 833 P.2d 876, 878 (Colo. App. 1992)).

**¶23**        Third, the external evidence at summary judgment doused any embers of ambiguity. Arizona courts may consider parol evidence to determine the intent of the parties if "the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent." *See Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 384, ¶ 12 (2006) (quoting *Taylor*, 175 Ariz. at 154). Here, over two years after signing the 2014 Addendum, McCullar assured Landlord he "signed the updated lease with a personal

guarantee" and did not "take that lightly." McCullar now insists he did not mean what he wrote, but that's not enough to defeat summary judgment. A person's undisclosed intent or understanding "is not admissible as evidence of the meaning of the written agreement." *See Helena Chemical Co. v. Coury Bros. Ranches, Inc.*, 126 Ariz. 448, 453 (App. 1980). This extrinsic evidence cements McCullar to his personal guaranty.

¶24      We decline McCullar's invitation to adopt the laws of other states that have chosen to require two signatures when binding a business and an individual in the same contract. Arizona has not made that policy choice and we decline to make it now.

¶25      McCullar also contends that summary judgment was improper because he offered an alternative interpretation of the 2014 Addendum—that he agreed only to enter a personal guaranty down the road. He emphasizes the word "shall" in the relevant sentence: "Jason McCullar and Scott Yelton shall personally guarantee the Lease."

¶26      We disagree. The verb "shall" directly modifies "personally guarantee." The contract does not say he "shall *at some point* sign a separate agreement." A party's alternative interpretation does not render the agreement ambiguous. *See Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 96 (App. 1990) (a contractual term "is not ambiguous . . . merely because one party assigns a different meaning to it in accordance with his or her own interest"). And again, the external evidence still negates this interpretation.

¶27      McCullar's last two arguments are not persuasive. McCullar argues the 2014 Addendum is not a personal guaranty because his spouse never signed the document to bind the community under A.R.S. § 25-214(C)(2). The absence of his wife's signature, however, only shows he did not bind the community. He also stresses that Arizona courts "generally construe a guaranty to limit a guarantor's liability," *Tenet Healthsystem TGH, Inc.*, 203 Ariz. at 220, ¶ 7, and generally resolve ambiguities against the drafting party, *Ins. Agencies Co. v. Weaver*, 124 Ariz. 327, 329 (1979). But we only deploy those interpretative shortcuts when a contract is ambiguous, *Valley Nat'l Bank of Phx. v. Shumway*, 63 Ariz. 490, 497 (1945), and this contract is not.

## B. Scope of personal guarantee

¶28      McCullar raises three arguments about the scope of guarantee. He argues "it is impossible to tell" which "lease" he guaranteed under the 2014 Addendum. We disagree. The plain language of the 2014

Addendum "reinstated" only the First Lease, and McCullar personally guaranteed the terms of that lease from April 2014 to January 2016.

¶29 He next argues he cannot be liable for damages incurred before he signed the 2014 Addendum. We need not reach the bulk of this argument because the summary judgment record contained substantial evidence of post-2014 defaults, including the mountain of debris left at the premises in 2016 and unpaid rent from 2016.

¶30 We agree, however, that McCullar was not personally liable for unpaid rent before he signed the 2014 Addendum and personally guaranteed the lease. *See* 38A C.J.S. Guaranty § 56 (2022) (guaranty clauses apply prospectively). We therefore reduce the damages by $245,740—which represents the amount due for unpaid rent and rental taxes from 2012 and 2013. We affirm the rest of the damages award.

¶31 McCullar also argues that summary judgment was improper because the 2014 Amendment's guarantee clause did not differentiate between a payment "guarantee" or collection guaranty. We disagree. McCullar agreed to "personally guarantee the Lease" under the 2014 Amendment. "A guarant*ee* is a promise to pay an obligation between a creditor and debtor." *Howard v. Associated Grocers*, 123 Ariz. 593, 595 (1979); *Phoenix Arbor Plaza, Ltd. v. Dauderman*, 163 Ariz. 27, 29 (App. 1989) ("A guarantee is a contract secondary or collateral to the principal contractual obligations which it guarantees."); *Guarantee*, Black's Law Dictionary (11th ed. 2019) (defining "guarantee" as "[t]he assurance that a contract or legal act will be duly carried out"). On the other hand, a guarant*y* has been defined as "[a] promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." *Guaranty*, Black's Law Dictionary (11th ed. 2019).

¶32 But we need not rely solely on the difference in spelling to divine the meaning of the guarantee. McCullar's email to LaPour shows his intent to "personally guarantee" not just the rent payments, but the other lease obligations. He declared:

> I intend to process material and clean up the shingle pile.
> Please make no mistake that I signed the updated lease with
> a personal guarantee, and while some people may take that
> lightly, I do not. It is my intention to right this issue.

¶33 Landlord's parol evidence dispels any doubt as to the intent behind the guarantee agreement. *See Mason v. Telefunken Semiconductors Am., LLC*, 797 F.3d 33, 38 (1st Cir. 2015) (summary judgment proper when

extrinsic evidence makes a contract's meaning unequivocal).  McCullar presented no disputing evidence.  We therefore affirm the superior court's entry of partial summary judgment on Landlord's contract claims.

### III.    Final Judgment under Rule 54(b)

**¶34**        McCullar contends the superior court should not have entered a Rule 54(b) judgment because the continuing lawsuit turns on the same facts and issues resolved here.  *See* Ariz. R. Civ. P. 54(b).  But a claim for breach of guaranty turns on different elements and requires different proof than actions for fraud, unlawful acts and punitive damages claims.  *See GM Dev. Corp.*, 165 Ariz. at 8-9.

### CONCLUSION

**¶35**        We affirm the superior court's entry of partial summary judgment for Landlord on its contract claims, but reverse, and reduce the total damages award from $10,697,403 to $10,451,663.  *See Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 595-96, ¶ 3 (App. 2012) (affirming judgment but reducing damages award without remanding).

**¶36**        Landlord requests its attorney fees and costs under A.R.S. § 12-341.01(A) (fees awarded to "successful party" "in any contested action arising out of contract").  Landlord has substantially prevailed on appeal, so we grant its reasonable attorney fees subject to compliance with ARCAP 21.  *See Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430 (App. 1994) ("While the award of money is an important item to consider when deciding who is the prevailing party, the fact that a party does not recover the full measure of relief it requests does not mean that it is not the successful party.").  We also grant Landlord its costs on compliance with ARCAP 21.

