35 P.3d 426

**Stephaney BENNETT, a married woman, Plaintiff–Appellant,**

v.

**APPALOOSA HORSE CLUB, an Oregon nonprofit corporation, Defendant–Appellee.**

**No. 1 CA–CV 01–0027.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 6, 2001.

Frederick E. Davidson & Associates, P.C. by Frederick E. Davidson, Ivan Kolesik, Jr., Scottsdale, Attorneys for Appellant.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by P. Bruce Converse, Valerie C. Sheedy, Phoenix, Attorneys for Appellee.

## OPINION

PATTERSON, Judge.

¶ 1 Stephaney Bennett appeals from the trial court's dismissal of her case against the Appaloosa Horse Club ("ApHC"). The court found that a forum selection clause in the parties' agreement required all lawsuits by members against the ApHC be filed in the state or federal courts of Latah County, Idaho. For the reasons discussed, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 ApHC is a nonprofit membership organization that is headquartered in Moscow, Latah County, Idaho. The purpose of ApHC is to preserve, improve, and standardize the breed of horses known as the Appaloosa. ApHC has members throughout the United States and certifies Appaloosa horse shows and competitions around the country.

¶ 3 Bennett is an Arizona resident and a member of ApHC since 1991. In October 1996, Bennett purchased an Appaloosa horse named "Rozipporoo." Rozipporoo's prior owner registered him with ApHC before the sale to Bennett.

¶ 4 Bennett purchased Rozipporoo as a show horse, intending to exhibit him in various shows sanctioned by ApHC. Rozipporoo competed in several ApHC events. At a show in October 1997, however, an ApHC inspector refused to permit Rozipporoo to compete, questioning his eligibility as an Appaloosa.

¶ 5 Bennett appealed the inspector's decision, and ApHC held a hearing on the matter. ApHC then affirmed the decision to revoke Rozipporoo's registration.

¶ 6 Bennett filed a lawsuit against ApHC in Maricopa County Superior Court, alleging claims of breach of contract (i.e., the membership agreement between the parties), breach of the covenant of good faith and fair dealing, negligence, fraud, and consumer fraud, and sought both declaratory and injunctive relief. ApHC moved to dismiss on the basis that the parties' membership agreement contained a forum selection clause requiring all lawsuits by members against ApHC be filed in the federal or state courts of Latah County, Idaho. Bennett opposed enforcement of the forum selection clause.

¶ 7 The trial court denied the motion to dismiss, expressing uncertainty about Arizona law regarding enforceability of forum selection clauses. In response, ApHC filed a special action with this court, and we stayed the lower court proceedings.

¶ 8 Our memorandum decision laid out a framework for determining whether a forum selection clause was enforceable. We stated, in pertinent part:

> Thus, we hold that forum selection clauses are presumptively valid and that the complaining party bears the burden of proving the contract to be one of adhesion. Where such a clause is contained in an adhesion contract, the court must examine the reasonable expectations of the adhering party and determine whether the contract is unconscionable.

We remanded to the trial court with directions to apply the test found in *Societe Jean Nicolas et Fils v. Mousseux*, 123 Ariz. 59, 597 P.2d 541 (1979), to make findings as

to the adhesive nature of the contract, and, if the contract was found to be adhesive, to determine the reasonable expectations of the adhering party and the unconscionability of the contract term, and to determine the forum selection clause's general enforceability.[1]

¶ 9 Upon remand, ApHC renewed its motion to dismiss, and the parties submitted supplemental memoranda on the issue. The trial court granted the motion to dismiss, finding the membership agreement not adhesive and the forum selection clause enforceable under the *Mousseux* test. Bennett then filed this appeal. We have jurisdiction over the case pursuant to Arizona Revised Statute ("A.R.S.") section 12–2101(B).

## ISSUE

¶ 10 Did the trial court properly grant the motion to dismiss based on the forum selection clause?

## DISCUSSION

### Standard of Review

■ ¶ 11 We elect to follow the Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits and adopt a *de novo* review of the enforceability of forum selection clauses. *See Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290–91 (11th Cir.1998), *cert. denied,* 525 U.S. 1093, 119 S.Ct. 851, 142 L.Ed.2d 704 (1999); *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 301 (5th Cir.1998), *cert. denied,* 525 U.S. 1141, 119 S.Ct. 1031, 143 L.Ed.2d 40 (1999); *Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1229 (6th Cir.1995); *Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 207 (7th Cir.1993); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.1992). We conclude that *de novo* review is appropriate because decisions concerning the enforceability of forum selection provisions require interpretation of contract provisions and findings of unconscionability and fairness, which are legal determinations. *See Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995) (the determination of unconscionability is to be

made by a court as a matter of law after the requisite factual findings have been made); *Samaritan Health Sys. v. Superior Court,* 194 Ariz. 284, 288, ¶ 14, 981 P.2d 584, 588 (App.1998) (contract interpretation is a legal inquiry conducted *de novo* ).

### Contract is Not One of Adhesion

■ ¶ 12 The trial court properly concluded that the membership agreement was not a contract of adhesion.

> An adhesion contract is typically a standardized form "offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract."

*Broemmer v. Abortion Servs. of Phoenix, Ltd.,* 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992) (quoting *Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (1976) (citations omitted in original)).

¶ 13 In concluding the contract at issue was not one of adhesion, the trial court was persuaded by the case of *Cruise v. Castleton, Inc.,* 449 F.Supp. 564, 570 (S.D.N.Y.1978), wherein the district court held that a similar membership agreement was not adhesive. In *Cruise,* two members of the United States Trotting Association ("USTA") sued the USTA, asserting that it had negligently tattooed a horse with an incorrect registration number, causing it to be disqualified from certain competitions. 449 F.Supp. at 566–67. The district court enforced a forum selection clause contained in the by-laws of the USTA and transferred the action to the appropriate forum. *Id.* at 570–71. In response to the plaintiffs' argument that the forum selection clause was part of a contract of adhesion that should not be enforced, the court noted:

> This is not a situation where the court is asked to enforce a highly prejudicial term in a contract between two parties of significantly different bargaining power, which

---

1. In *Mousseux,* the court concluded that a forum selection clause was enforceable unless it was the result of an unfair bargain or was unreasonable

in that it would deprive a litigant of his or her day in court. *Id.* at 61, 597 P.2d at 543.

term is to the benefit of the stronger and the detriment of the weaker. Plaintiffs have entered into a contract with their fellow members, who adopted the instant by-law for their mutual benefit. Collectively, they retain the power to change it. Cases concerning overwhelming bargaining power in a commercial context are simply inapposite. Moreover, plaintiffs' argument proves too much, for it would vitiate every by-law of a host of membership associations.

*Id.* at 570.

¶ 14 We are equally persuaded by *Cruise.* Just like the USTA's forum selection clause, the one contained in ApHC's rules is not a contract of adhesion. The clause is part of the by-laws applicable to every member, and is a provision adopted by the members via either a majority vote or the vote of the elected directors. Like the plaintiffs in *Cruise,* Bennett is a voting member of the ApHC (since 1991) and, therefore, does not lack bargaining power. She has the ability to lobby other members for new rules or revisions to the rules, to run for office, to attend meetings, and to vote on issues before the membership and the election of directors.[2] A voluntary membership agreement, where the organization is controlled by its own members through a voting process, does not present the same unequal bargaining concerns as the typical consumer-vendor agreement underlying most adhesion contracts.

¶ 15 The mere fact that the membership agreement may be offered with no negotiation on individual terms does not alter our decision. To avoid claims of discrimination among members, the organization must apply the same terms to all members, and there can be no individual negotiations. Because members retain the right to change those terms by majority vote or the election of new officers, however, there is the constant opportunity to "negotiate" changes in the membership agreement. The ability to negotiate negates any finding of adhesiveness.[3]

### Trial Court's Decision is Not Based on the Wrong Rules

¶ 16 Bennett asserts that the trial court improperly applied the forum selection clause from the 1997 Rules, instead of the 1999 Rules provision that this court deemed controlling in its prior memorandum decision. A review of the trial court's minute entry rebuts this assertion.

¶ 17 The trial court referenced the former versions of the forum selection clause in response to Bennett's argument that ApHC had "surreptitiously" enacted the 1999 forum selection clause provision, and that it was not a "bargained for" term of her membership agreement. The court was merely pointing out that similar forum selection provisions requiring suit in Latah County, Idaho, had been in effect since Bennett joined the organization, and were known to Bennett at the time her cause of action arose. Accordingly, the court rejected Bennett's assertion that the clause was an unbargained for, adhesive term of the contract. We similarly reject the argument that the membership agreement, or its forum selection clause, is a contract of adhesion.

¶ 18 Regardless, even if the trial court applied the 1997 provision, the content of the various versions of the forum selection provision are essentially the same,[4] and all make it clear that actions against ApHC must be brought in Latah County, Idaho. Therefore,

2. Bennett asserts that because one director-member refused to engage in a dialogue with her about her horse's registration revocation, she was somehow "stripped" of her membership rights. There is no evidence in the record supporting the contention that Bennett was in any way divested of her membership rights.

3. Because we conclude that the contract was not one of adhesion, we do not need to address the issues of Bennett's reasonable expectations regarding the forum selection clause or any alleged unconscionability of the clause.

4. The various forms of the forum selection clause are mainly distinguished by where they were placed in the Rules-some were placed under the disciplinary rule provisions, others were placed under the registration protest provisions. The 1999 provision consolidated the various rules into a single rule of general applicability, Rule 10–D.

Bennett failed to demonstrate any prejudice from the alleged error.

### The *Mousseux* Test

■ ¶ 19 Under the *Mousseux* test, a forum selection clause is enforceable as long as it is not the result of unfair bargaining or so unreasonable that the plaintiff would be deprived of his or her day in court. 123 Ariz. at 61, 597 P.2d at 543. The trial court determined that the forum selection clause passed the *Mousseux* test. We agree.

■ ¶ 20 The party claiming oppression or unfairness must meet a heavy burden of proof, even when the designated forum is in a geographically remote location. See *M/S Bremen v. Zapata Off-Shore* Co., 407 U.S. 1, 17, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Mere physical inconvenience and increased costs are not enough to defeat a forum selection clause. See *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594–95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

■ ¶ 21 When analyzing the adhesion issue, we rejected Bennett's argument that the clause resulted from unfair bargaining. Bennett also argues that the clause is so unreasonable it will deprive her of her day in court. In particular, she asserts that Idaho is a great distance from Arizona, and she will have to transport her horse to Idaho, a proposition that could endanger the horse's welfare. This argument is somewhat disingenuous considering that Bennett's goal in this litigation is to reinstate Rozipporoo's Appaloosa registration so that he may travel to various shows and competitions across the country. Regardless, we see no reason why the horse would have to travel to Idaho for the litigation. Videotapes and pictures of the horse should meet any evidentiary needs, or if any experts need to personally examine the horse, they can travel to Arizona if none are available in this state.

■ ¶ 22 Bennett also complains that many of the witnesses are located in Arizona. Location of witnesses is not dispositive in analyzing the enforceability of a forum selection clause. See *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10–11 (2d Cir.1995) (balanc-ing witness locations in determination that forum selection clause must be enforced). Moreover, it would appear that several of the witnesses do not reside in this state—for instance, the various officials at ApHC who were involved in the initial registration of Rozipporoo and the subsequent revocation. It is likely that many of these individuals reside in Idaho where ApHC is headquartered.[5] The witnesses who are reluctant to travel may be deposed for their trial testimony. Bennett has not demonstrated the type of oppressiveness or unreasonableness needed to invalidate the forum selection clause. See *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 326–27 (9th Cir.1996) (only in extreme circumstances, such as forum selection clause demanding litigation in war-torn Iran, can fear of travel trump a forum selection clause).

### Tort and Fraud Claims

■ ¶ 23 Bennett asserts that even if the forum selection clause is enforceable, her negligence and fraud/consumer fraud claims are not subject to the membership agreement and its forum selection clause. Bennett failed to raise this argument below, and therefore, may not assert it for the first time on appeal. *Stewart v. Mutual of Omaha Ins. Co.*, 169 Ariz. 99, 108, 817 P.2d 44, 53 (App. 1991).

■ ¶ 24 Even if Bennett had timely raised this argument, we would reject it. The forum selection clause applies to "any action in law or equity against the ApHC." The clause does not except negligence or fraud-based claims. Moreover, regardless of the legal theory pursued, all of Bennett's claims arise out of the parties' membership agreement—all the claims pertain to Bennett's contention that ApHC revoked her horse's ApHC registration in violation of the rules set forth in that agreement. Accordingly, none of Bennett's claims lie beyond the scope of the forum selection clause.

### CONCLUSION

¶ 25 The trial court properly concluded that the forum selection clause was enforce-

---

5. ApHC's records are also located there.

able, and dismissed Bennett's action. We affirm its judgment in favor of ApHC.

¶ 26 ApHC requests an award of its attorneys' fees on appeal pursuant to both A.R.S. § 12–341.01(A), as the prevailing party in an action arising out of contract, and the applicable provision of the parties' membership agreement, which directs a fee award to ApHC if it prevails in any litigation with a member. The awarding of attorneys' fees to a prevailing party pursuant to a contract between the parties is mandatory. *F.D.I.C. v. Adams,* 187 Ariz. 585, 595, 931 P.2d 1095, 1105 (App.1996). Therefore, contingent on its compliance with Arizona Rule of Civil Appellate Procedure 21(c), we award ApHC its fees pursuant to the fee provision of the parties' agreement.

CONCURRING: JAMES B. SULT, Presiding Judge, and HELDON H. WEISBERG, Judge.