FILED BY CLERK

APR 16 2012

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

DESARROLLO IMMOBILIARIO Y )
NEGOCIOS INDUSTRIALES DE ALTA )
TECNOLOGIA DE HERMOSILLO, S.A. )
DE C.V., successor in interest to LUIS )
ROBERTO MARTIN MAZON RUBIO, )
ENRIQUE RUBEN MAZON RUBIO, )          2 CA-CV 2011-0117
JORGE HORACIO MAZON RUBIO, JOSE )     DEPARTMENT B
OSCAR MAZON RUBIO, HECTOR )
RUBEN MAZON LIZARRAGA, GUSTAVO )      O P I N I O N
ALBERTO MAZON LIZARRAGA, )
RICARDO MAZON LIZARRAGA, and )
SERGIO JESUS MAZON RUBIO, )
                                    )
                 Plaintiff/Appellee, )
                                    )
            v.                       )
                                    )
KADER HOLDINGS COMPANY LIMITED, )
a Bermuda company,                   )
                                    )
                 Defendant/Appellant. )
                                    )

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. CV20030047

Honorable James A. Soto, Judge

AFFIRMED

Jennings, Strouss & Salmon, P.L.C.
  By James O. Ehinger                                    Phoenix
                                    Attorneys for Plaintiff/Appellee

Snell & Wilmer L.L.P.
  By Jeffrey Willis and Andrew M. Jacobs                 Tucson

and

Troutman Sanders, L.L.P.
  By Eric A. Szweda
                                Hong Kong
Attorneys for Defendant/Appellant

V Á S Q U E Z, Presiding Judge.

**¶1**       This contract action arises out of a lease contract and guarantee between appellee Desarrollo Immobiliario y Negocios Industriales de Alta Technologia de Hermosillo, S.A. de C.V. (Desarrollo) as landlord, Siempre Novedoso de Mexico, S.A. de C.V. (Sinomex) as tenant, and appellant Kader Holdings Company, Limited (Kader) as guarantor of Sinomex's obligations under the lease. After Sinomex repeatedly failed to meet its obligations under the terms of the lease, Desarrollo filed this lawsuit against both Sinomex and Kader in Arizona. On appeal, Kader challenges the trial court's exercise of personal jurisdiction over it and the court's grant of summary judgment in favor of Desarrollo. For the reasons stated below, we affirm.

**Factual Background and Procedural History**

**¶2**       This case involves a fairly standard business transaction between sophisticated corporations. Kader is a Bermuda company with its principal place of business in Hong Kong. It has several subsidiaries in the toy industry, including Sinomex, originally called Kadermex, S.A. de C.V., a Mexican company formed in October 1992. Desarrollo is a Mexican real estate company that has been involved in the construction of large, industrial buildings since 1986. The parties' joint business dealings

2

began in the early 1990s, when Kader sought to develop a toy factory in Sonora, Mexico.[1]

¶3 On October 21, 1992, Desarrollo, Sinomex, and Kader signed a lease contract providing that Desarrollo would construct a building on property it owned and Sinomex would lease the building for an initial term of six years with five options to renew for additional terms of two years each. Under the lease, Kader agreed "to be jointly obligated with [Sinomex], in the due fulfillment of each and all of the obligations arising from" that agreement. The parties executed English and Spanish versions of the lease contract, which provided that it would be governed by the law and jurisdiction of Sonora, Mexico. Desarrollo and Kader also executed a separate guarantee that set forth Kader's obligations as guarantor in more detail. The guarantee stated the laws of Sonora, Hong Kong, or Bermuda would control.

¶4 Desarrollo subsequently began construction of the building and obtained a loan from Bank One, Arizona, NA (Bank One) to complete the project. In making the loan, Bank One apparently requested that the parties amend the lease contract to reflect that Arizona law and jurisdiction would apply and assign both the lease and guarantee to it as collateral for the loan. In October 1993, Desarrollo, Sinomex, and Kader signed an amendment ("lease amendment")—in both English and Spanish—providing that Arizona

---

[1]The Mazon Group, which owns Desarrollo, is a diversified Mexican company with dealings in real estate. Individual members of the Mazon Group were apparently the initial landlords in the transaction; however, they subsequently assigned their interest to Desarrollo. For ease of discussion, we refer to Desarrollo as the landlord throughout the transaction.

"law and jurisdiction" would control.[2] Desarrollo executed an assignment of the guarantee to Bank One; Kader and Sinomex consented to the assignment and acknowledged that all future payments under the lease would "be made to Bank One, Arizona, NA."

¶5 After taking occupancy of the building, Sinomex consistently failed to make timely rental payments. Consequently, in September 1996, Desarrollo and Sinomex entered into the first of three work-out agreements ("1996 agreement"). Under the 1996 agreement, the parties acknowledged Sinomex's default and established a payment schedule and revised terms for the past-due rent.

¶6 Despite the 1996 agreement, Sinomex's financial difficulties continued. In February 1997, Desarrollo sued Sinomex and Kader for breach of contract under the lease and guarantee. On May 8, 1998, however, Desarrollo and Sinomex executed a settlement agreement pursuant to which Sinomex paid Desarrollo $685,000 in satisfaction of the deficiencies, Sinomex and Kader were released from liability for all obligations due on or before April 1, 1998, and the lawsuit was dismissed. That same day, Desarrollo and Sinomex also executed an addendum to the lease ("1998 addendum"). Under the 1998 addendum, Sinomex exercised three of its options to renew simultaneously, extending the lease term for an additional six years. Sinomex nevertheless still struggled to make full and timely rental payments. Therefore, in October 1999 and April 2002, Desarrollo and

---

[2]Although the document bears a typewritten date of September 1993, the parties agree it was not executed until October 1993.

Sinomex entered into two additional work-out agreements ("1999 agreement" and "2002 agreement") in a further attempt to address the payment of rental arrearages.

¶7 In February 2003, Desarrollo ultimately brought this action in Santa Cruz County, against Sinomex and Kader, alleging breach of contract under the lease and guarantee. Sinomex unexpectedly vacated the building in September 2003 and did not file a response to Desarrollo's complaint. In January 2004, Kader moved to dismiss the lawsuit, arguing the Arizona trial court lacked personal jurisdiction. A year later, the court denied the motion, finding the forum selection clause in the lease amendment was binding on Kader.

¶8 In March 2005, Kader filed a cross-claim against Sinomex and a counterclaim against Desarrollo. In May 2005, Desarrollo filed a motion for partial summary judgment on the issue of Kader's liability for the lease payments as guarantor. Kader filed a cross-motion for summary judgment on the same issue. Desarrollo filed a separate motion to dismiss Kader's counterclaim, and the trial court granted that motion in December 2005. The court also granted Desarrollo's motion for partial summary judgment in August 2007 and denied Kader's two motions for reconsideration of that decision.

¶9 In April 2010, the matter proceeded to a bench trial solely on the issue of damages. The trial court issued its under-advisement ruling on March 4, 2011, awarding

Desarrollo more than $3.5 million in damages, plus interest and taxes, against Kader and Sinomex.[3] Final judgment was entered on June 11, 2011. This appeal followed.

## Discussion

**Jurisdiction**

¶10 Kader argues the trial court lacked personal jurisdiction over it because the forum selection clause contained in the lease amendment did not apply to Kader as guarantor and, even if it did, the clause was unreasonable and therefore unenforceable.[4] We review the court's exercise of personal jurisdiction de novo. *Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, ¶ 8, 224 P.3d 988, 990 (App. 2010). To avoid dismissal of the lawsuit for lack of personal jurisdiction, Desarrollo needed only to make a prima facie showing that jurisdiction was proper. *Bohreer v. Erie Ins. Exch.*, 216 Ariz. 208, ¶ 7, 165 P.3d 186, 189 (App. 2007). It could not rely solely on the allegations in the complaint; rather, it had to establish a factual basis supporting personal jurisdiction. *In re Consol. Zicam Prod. Liab. Cases*, 212 Ariz. 85, ¶ 8, 127 P.3d 903, 907-08 (App. 2006). Once such a showing was made, Kader had the burden of rebuttal. *Id.*

---

[3]Because Sinomex failed to appear, the trial court granted Desarrollo's motion for entry of a default judgment against Sinomex.

[4]Desarrollo argues Kader has waived the issue of jurisdiction on appeal by filing a cross-claim against Sinomex and a counterclaim against Desarrollo. However, a personal jurisdiction defense can be waived only where the defendant files a permissive pleading before the trial court rules on the jurisdictional issue. *See Nat'l Homes Corp. v. Totem Mobile Home Sales, Inc.*, 140 Ariz. 434, 437, 682 P.2d 439, 442 (App. 1984) ("[A] defendant who has obtained an adverse ruling on its jurisdictional defense has not waived that defense on appeal even though he proceeds to trial on the merits and a judgment has been entered against him."). Here, Kader filed its cross-claim and counterclaim after the trial court denied its motion to dismiss; thus, the issue of jurisdiction was not waived.

¶11 "There are three types of activities by a defendant which may allow a court to assert personal jurisdiction over that defendant: (1) consent; (2) presence in the forum; (3) causing effects in the forum." *Morgan Bank (Del.) v. Wilson*, 164 Ariz. 535, 537, 794 P.2d 959, 961 (App. 1990). In this case, the trial court concluded Kader was subject to Arizona's jurisdiction on the basis of the forum selection clause in the lease amendment. And, indeed, a defendant may consent to a particular court's exercise of personal jurisdiction through a variety of legal arrangements, including a forum selection clause in a contract. *Id.* Kader contends, however, "[t]he trial court erred by finding the forum selection clause in the lease amendment applied to Kader as guarantor." We review the court's interpretation of the contract de novo. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, ¶ 37, 167 P.3d 111, 121 (App. 2007).

¶12 To determine whether the forum selection clause in the lease amendment applied to Kader, we review the relevant documents—the lease contract, the lease amendment, and the guarantee—to ascertain the parties' intent. *See Long John Silver's, Inc. v. DIWA III, Inc.*, 650 F. Supp. 2d 612, 626 (E.D. Ky. 2009); *see also Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). In doing so, we first "look to the plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983). Only if the language of the contract is ambiguous do we then look to the surrounding circumstances for aid in determining the parties' intent. *Id.* at 265, 681 P.2d at 417.

7

¶13        Based on the plain language of the documents in this case, we conclude the parties intended the forum selection clause of the lease amendment to apply to Kader. First, under the guarantee, Kader promised "the prompt, full and complete payment and performance . . . of all of the conditions, covenants, obligations, liabilities and agreements of [Sinomex] as set forth in the contract or any extension thereof." Kader expressly guaranteed more than Sinomex's rental payments; it adopted as its own every condition and extension of the lease contract, including the forum selection clause of the lease amendment. As another court has explained: "This emphatic expression of intent to assume every obligation under the contract necessarily included the consent-to-jurisdiction clause. To interpret this clause narrowly . . . is neither good jurisprudence nor good economics." *Lemme v. Wine of Japan Imp., Inc.*, 631 F. Supp. 456, 461 (E.D.N.Y. 1986). And second, Kader not only signed the guarantee, but also signed the lease contract and amendment as guarantor. Because Kader signed the lease contract and amendment, both containing a forum selection clause, and the guarantee expressly provides that Kader shall be bound by all of the provisions and extensions of the lease contract, Kader is subject to the forum selection clause of the lease amendment.

¶14        But as Kader points out, the lease contract includes choice of law and forum selection clauses naming Sonora, Mexico, while the lease amendment provides that Arizona "law and jurisdiction" shall govern. And the guarantee contains only a choice of law provision. Other courts have found that in similar circumstances omission of the forum selection clause from the guarantee demonstrates the parties' intent not to

8

incorporate the underlying agreement's forum selection clause into the guarantee.[5] Although we have found no Arizona case directly on point, this court dealt with a similar issue involving a choice of law clause contained in a lease but not a guarantee in *Phoenix Arbor Plaza, Ltd. v. Dauderman*, 163 Ariz. 27, 785 P.2d 1215 (App. 1989). There, we held the guarantor was not subject to the choice of law clause in the lease because the lease and guarantee were separate documents involving different parties. *Phx. Arbor Plaza*, 163 Ariz. at 28-29, 785 P.2d at 1216-17. Here, Kader not only signed the guarantee, it also signed the lease contract and amendment, effectively agreeing to be bound by those documents as well. We therefore reject Kader's suggestion that an express agreement subjecting a guarantor to a particular forum must be contained in a forum selection clause in the guarantee. *See Lemme*, 631 F. Supp. at 461; *see also United Airlines, Inc. v. ALG, Inc.*, 873 F. Supp. 147, 151 (N.D. Ill. 1995).

¶15 But even were we to find the language of the documents ambiguous, in looking to the circumstances of the transactions, we nevertheless conclude that the parties intended to apply the forum selection clause to Kader as guarantor. *See United Cal. Bank*, 140 Ariz. at 265, 681 P.2d at 417. The parties were aware that outside financing would be necessary for the construction of the building when they signed the original

---

[5]*See Pal Pools, Inc. v. Billiot Bros., Inc.*, 394 N.Y.S.2d 280, 281 (App. Div. 1977) (because guarantee contained only choice of law clause, guarantors did not consent to jurisdiction as agreed to in underlying agreement); *see also Gelato Di Roma Int'l, Inc. v. Gornall*, No. 06-12178, 2006 WL 2433454, at *3-4 (E.D. Mich. Aug. 22, 2006) (guarantor not bound where did not sign underlying promissory note); *De Lage Landen Fin. Servs., Inc. v. Levine*, No. 02-2991, 2002 U.S. Dist. LEXIS 24751, at *8-9 (E.D. Pa. Dec. 9, 2002) (guarantor not bound where did not sign underlying lease and only guaranteed payment).

lease and guarantee in October 1992 and that "Bank One, Arizona NA" would provide the financing. The guarantee outlined Kader's obligations in the event the guarantee was assigned to a bank or other lending institution, and Kader subsequently consented to the assignment of the guarantee to Bank One as additional security for the loan. As we noted above, Kader also acknowledged that future rental payments would be made to "Bank One, Arizona, NA." And finally, Desarrollo, Sinomex, and Kader executed the lease amendment containing the Arizona law and jurisdiction clause as a condition of Bank One making the loan. It makes little sense that Kader would have been required to sign the lease amendment as guarantor and that the guarantee would have been assigned to Bank One if Kader was not bound by the forum selection clause in the lease amendment.[6] *See Sw. Sav. & Loan Ass'n v. SunAmp Sys., Inc.*, 172 Ariz. 553, 560, 838 P.2d 1314, 1321 (App. 1992) ("[C]ourts are not constrained by textual omissions to abandon common sense and experience or to ignore the surrounding circumstances of an agreement.").

¶16        Kader further contends the forum selection clause of the lease amendment is not enforceable because it is unreasonable. We review the enforceability of a forum

---

[6]Notably, Kader's attorney drafted the lease and Kader was the driving force behind this business deal. Moreover, Kader's guarantee of Sinomex's obligations under the lease was an "important inducement" for Desarrollo to enter into the lease contract given that Sinomex was formed less than two weeks before the lease and guarantee were signed. *Lemme*, 631 F. Supp. at 461.

10

selection clause de novo.[7] *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, ¶ 11, 35 P.3d 426, 429 (App. 2001).

¶17 Despite initial reluctance to enforce forum selection clauses, courts consistently have upheld their validity since the latter half of the twentieth century. *See Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 60, 597 P.2d 541, 542 (App. 1979). In Arizona, "a forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation." *Id.* at 61, 597 P.2d at 543. In determining reasonableness, we analyze whether enforcing a forum selection clause would deprive the defendant of his or her day in court. *Morgan Bank*, 164 Ariz. at 538, 794 P.2d at 962. The party challenging the validity of the clause bears a heavy burden of proof, *Mousseux*, 123 Ariz. at 61, 597 P.2d at 543; *Bennett*, 201 Ariz. 372, ¶¶ 19-20, 35 P.3d at 431, and Kader has not met this burden.

¶18 On appeal, Kader does not allege the forum selection clause of the lease amendment was the result of unfair bargaining power or fraud, but only challenges its reasonableness.[8] Kader points to factors—such as convenience and the state's interest in

---

[7]Desarrollo suggests this court used an abuse of discretion standard to determine the enforceability of the forum selection clause in *Morgan Bank*. We disagree. Despite discussing the defendant's argument that an abuse of discretion was the proper standard, this court actually reviewed the issue in that case de novo. *See Morgan Bank*, 164 Ariz. at 537 & n.1, 794 P.2d at 961 & n.1.

[8]Kader also claims the trial court failed to consider reasonableness in its order denying the motion to dismiss for lack of personal jurisdiction. However, Kader never raised this issue in the trial court, and therefore it is waived on appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court . . . should be afforded the opportunity to correct any asserted defects . . . errors not raised in the trial court cannot be raised on appeal.").

the lawsuit—that other courts have considered in conducting a reasonableness analysis. However, the Arizona test for reasonableness does not include those factors. *See Morgan Bank*, 164 Ariz. at 538, 794 P.2d at 962. And, Kader does not argue that litigating the case in Arizona precluded it from presenting evidence or witnesses. *See Bennett*, 201 Ariz. 372, ¶¶ 21-22, 35 P.3d at 431. Thus, it has failed to establish that enforcement of the forum selection clause deprived it of its day in court.

¶19 Kader nevertheless maintains it was unreasonable for the trial court to exercise jurisdiction in this case because the parties have no connection to Arizona, which "offend[s] 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980), *quoting Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). But when the exercise of jurisdiction is based on the parties' consent through a forum selection clause, courts need not conduct an analysis of the defendant's contacts with the forum. *Morgan Bank*, 164 Ariz. at 536-37, 794 P.2d at 960-61 (enforcing forum selection clause in favor of Arizona when defendant's only contact with state was sending payment here).

¶20 Finally, Kader asserts public policy concerns weigh against the trial court's exercise of personal jurisdiction. According to Kader, it is "absurd and untenable" for Arizona courts to exercise jurisdiction over disputes arising from contracts that designate this state as the appropriate forum when there is no nexus to the state. Although public policy concerns may be relevant, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

12

(1972), they do not control our decision here. It was reasonable for the parties to select Arizona as the forum in view of the Bank One loan. And, even though the loan was paid off and Bank One is not a party to this lawsuit, Kader never requested that the forum be changed from Arizona. Moreover, Kader does not dispute that this state provided a "neutral forum" for the litigation of the parties' ongoing disputes. *Id.* at 17. The trial court did not err in exercising personal jurisdiction over Kader.

**Summary Judgment**

¶21        Kader next argues the trial court erred in granting summary judgment in favor of Desarrollo because Desarrollo and Sinomex improperly modified the lease without Kader's consent, thereby extinguishing the guarantee. A trial court may grant summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). "[W]e view the evidence in the light most favorable to [Kader]," against whom judgment was entered, and "determine de novo whether there are genuine issues of material fact and whether the trial court erred in its application of the law." *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, ¶ 5, 3 P.3d 970, 972 (App. 1999). We will affirm the entry of summary judgment if it is correct for any reason. *Sanchez v. Tucson Orthopedic Inst.*, 220 Ariz. 37, ¶ 7, 202 P.3d 502, 504 (App. 2008).

¶22        As a preliminary matter, we must determine which forum's substantive law applies to the guarantee. The choice of law clause in the guarantee provides that the laws of Sonora, Hong Kong, or Bermuda shall apply, whereas the lease amendment states that

13

Arizona law applies. In the order denying Kader's motion to dismiss for lack of personal jurisdiction, the trial court found "the choice of law . . . in the [lease amendment] is binding and enforceable upon [Kader]." However, in the multiple rulings addressing the motions for summary judgment, the court cited law from both Arizona and Sonora, finding them largely consistent. On appeal, both parties cite to Arizona and Sonora law in support of their claims. Because we would reach the same conclusion under either Arizona or Sonora law, we refer to both.

¶23        First, Kader argues that the work-out agreements—particularly the 1996 agreement with its payment extensions and "unapproved modifications" to the lease— extinguished the guarantee. Kader thus claims the trial court erred in determining that it had guaranteed all "extensions or modifications of any kind." Pursuant to the guarantee, Kader guaranteed "all of the conditions, covenants, obligations, liabilities and agreements of [Sinomex] as set forth in the contract or any extension thereof between [Desarrollo] and [Sinomex]." In slight contrast, the lease contract states Kader will be "jointly obligated with [Sinomex], in the due fulfillment of each and all of the obligations arising from [the lease] and accepts that such guarant[ee] is valid and enforceable during the term of this agreement and any extension thereof."[9]

¶24        "A general principle of contract law is that when parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213

---

[9]The Spanish version of the lease contains nearly identical language.

Ariz. 83, ¶ 12, 138 P.3d 1210, 1213 (App. 2006). Here, Kader executed the lease contract and the guarantee and agreed to be bound by both documents. Although, as Kader points out, the language of the lease is slightly different, the language of the guarantee is clear and unambiguous—Kader guaranteed all of Sinomex's obligations under the lease "or any extension thereof" between Desarrollo and Sinomex. *See Phx. Arbor Plaza*, 163 Ariz. at 29, 785 P.2d at 1217 (guarantee secondary contract between different parties than underlying agreement). And, although guarantees generally are construed strictly to limit the guarantor's liability, *Westcor Co. Ltd. P'ship v. Pickering*, 164 Ariz. 521, 523, 794 P.2d 154, 156 (App. 1990), we nevertheless are bound by the clear and unambiguous language here, *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, ¶ 9, 218 P.3d 1045, 1050 (App. 2009). Thus, the payment extensions in the work-out agreements did not extinguish the guarantee.

¶25 Kader nevertheless claims that, in addition to granting payment extensions, the 1996 agreement otherwise modified the lease by "eliminating the default grace period, adding a provision charging interest in unpaid IVA taxes, and calling for an effective [twenty-seven percent] per annum default interest rate." Kader contends that because these changes are not "extensions or modifications" to which it consented and could have harmed Kader, they fail to meet the "stringent" requirements of Sonora and Arizona law. For this assertion, Kader relies on Sonora Civil Code Section 3147 and *Indian Village Shopping Center Investment Co. v. Kroger Co.*, 175 Ariz. 122, 854 P.2d 155 (App. 1993). Section 3147 permits modifications by the debtor and creditor as long

15

as the guarantor is not harmed.  In *Indian Village*, this court adopted the Restatement (First) of Security § 128 (1941), which similarly states:

> Where, without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
>
> (a) the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety . . . .

But as Desarrollo points out, the 1996 agreement was "simply [a] side agreement[] that allowed Sinomex to resolve its payment arrearages on terms applicable solely to those payments, and which had no effect upon the parties' on-going obligations under the [l]ease."  Thus, the 1996 agreement was not a "modification" to the lease contract, and Kader's reliance on Section 3147 and *Indian Village* is inapposite.

¶26      In a related argument, Kader contends that, based on Sonora Civil Code Section 3181, the 1996 agreement extinguished the guarantee.  Pursuant to Section 3181, "[a]ny extension or forbearance conceded to the debtor by the creditor, without the consent of the guarantor, extinguishes the guaranty."[10]  The parties agree that under Section 3181, an "extension" (or "prórroga") means an extension of time granted before the time for performance is due, while a "forbearance" (or "espera") is an extension of time granted after the time for performance is due.  The Spanish version of the lease states that Kader will be jointly obligated with Sinomex for all obligations arising under the lease "y cualesquiera de sus prórrogas," "and any of its extensions," but it does not

---

[10]The Spanish version of Section 3181 states:  "La prórroga o espera concedida al deudor por el acreedor, sin consentimiento del fiador, extingue la fianza."

use the word "esperas." Thus, as we understand its argument, Kader maintains the extensions Desarrollo had granted Sinomex to pay the past-due rent under the 1996 agreement constituted "esperas," and, because Kader did not consent to "esperas," the guarantee was extinguished under Section 3181. We disagree.

¶27 Although perhaps not an exact translation, "prórroga" appears to have a regular meaning consistent with its English counterpart, "extension." *See Webster's New World Concise Spanish Dictionary* 397 (2d ed. 2006). We conclude the term "prórroga" as used in the Spanish version of the lease carries this regular meaning, which encompasses all extensions, whether they are technically "prórrogas" or "esperas." Thus, despite using the term "prórroga" and not "espera" in the Spanish version of the lease, the parties did not intend to distinguish between the two types of extensions under Sonora law in either version of the lease or the guarantee. And Kader failed to present any evidence to the contrary. Kader therefore consented to "esperas" under the lease, including those in the 1996 agreement, making Section 3181 inapplicable.

¶28 Next, Kader contends Desarrollo and Sinomex did not properly exercise the options to renew the lease term and therefore the 1998 addendum exercising the options must be considered a new agreement that Kader did not guarantee. The lease states: "[Sinomex] shall have five (5) options to extend the initial term of the lease for a period of two (2) years each one." To exercise an option, Sinomex had to notify Desarrollo in writing no later than ninety calendar days before the expiration of the then-existing

17

term.[11]  In May 1998, Desarrollo and Sinomex executed the 1998 addendum, exercising three options under the lease and extending the term for an additional six years.

¶29        Kader argues Desarrollo and Sinomex failed to comply with the terms of the lease when they exercised three options simultaneously.[12]  We disagree.  The lease provided Sinomex with five options to extend the initial term of the lease.  But it did not specify that the options could only be exercised one at a time.  If Kader intended the options to be exercised one at a time, it easily could have said so when it drafted the lease.  *See United Cal. Bank*, 140 Ariz. at 258, 681 P.2d at 410 (contract construed against drafter).  There also was evidence that Kader or Sinomex actually recommended the simultaneous three-term extension because Sinomex's subcontractors would be more comfortable doing business with Sinomex if it had a long-term lease.  Moreover, Kader guaranteed "any extension" of the lease and does not dispute that the five options are "extensions" it guaranteed.  Consequently, whether Sinomex exercised the options separately or at once, Kader remained liable for all three extensions.  Thus, Desarrollo

---

[11]The parties acknowledge there is a discrepancy in the English and Spanish versions of the lease.  Under the English version, Sinomex had to exercise the options "within the ninety (90) calendar days prior to the expiration" of the existing term, while the Spanish version says "por lo menos (90) noventa días naturales con anterioridad" or "at least ninety calendar days prior."  In case of a discrepancy, the lease provides that the Spanish version controls.  Thus, Sinomex had to exercise the option at least ninety days before the expiration of the term.

[12]Kader cites trial testimony to show its intent that the two-year options would be exercised in succession.  However, this testimony was not submitted to the court until after it issued the summary judgment ruling.  Therefore, we do not consider it on appeal. *See Roosen v. Schaffer*, 127 Ariz. 346, 347, 621 P.2d 33, 34 (App. 1980) (on appeal from summary judgment this court does not consider facts not considered by trial court).

and Sinomex did not fail to comply with the lease contract by exercising the three options simultaneously in the 1998 addendum.

¶30 Finally, Kader argues on appeal, as it did during the damages trial, that it is not bound by any lease extension because Desarrollo violated the implied covenant of good faith and fair dealing inherent in every contract. Kader argues Desarrollo violated the covenant by extending the lease despite Sinomex's history of default and by accepting the option to renew nineteen months before the end of the initial term. To the extent Kader is raising this argument as a defense to liability, the argument should have been raised in response to Desarrollo's motion for partial summary judgment. By failing to assert it at that time, Kader waived the argument and should have been foreclosed from reopening the issue later.[13] *Cf. Cont'l Bank v. Wa-Ho Truck Brokerage*, 122 Ariz. 414, 417, 595 P.2d 206, 209 (App. 1979) (commercial reasonableness defense not waived when raised at summary judgment). However, the record shows Kader raised the issue during the damages trial. Desarrollo objected, and when the trial court asked Kader why it should be permitted to raise the issue again, *see Bogard v. Cannon & Wendt Elec. Co., Inc.*, 221 Ariz. 325, n.7, 212 P.3d 17, 23 n.7 (App. 2009) (discussing judicial policy of not reopening previously decided questions), Kader claimed that, under Sonora law, the implied covenant encompasses a duty to mitigate and asserted the issue thus was relevant to the question of damages. The court consequently allowed Kader to present evidence

---

[13]Significantly, the trial court also implicitly rejected any claim that Desarrollo had breached the implied covenant when the court dismissed Kader's counterclaim alleging breach of the implied covenant.

19

on the issue in that context. It is apparent however that, as on appeal, Kader's evidence and argument at trial primarily related to the issue of liability rather than mitigation of damages.

¶31 Whether we regard the argument as waived because it relates to Kader's liability or we treat it as properly relating to the issue of Desarrollo's duty to mitigate its damages, we agree with the trial court's rejection of the argument. "Whether a party has breached the covenant of good faith and fair dealing is a question of fact." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, 214 P.3d 415, 421 (App. 2009). And we will not set aside the court's finding unless it is clearly erroneous. *Id.*

¶32 The trial court found Kader failed to show that Desarrollo had breached its duty of good faith and fair dealing because Desarrollo was under no obligation to terminate the lease sooner and had acted reasonably in working with Sinomex despite its many defaults. On appeal, we do not reweigh the evidence but only examine the record to determine whether substantial evidence supports the court's finding. *In re Estate of Pouser*, 193 Ariz. 574, ¶ 13, 975 P.2d 704, 709 (1999). We conclude substantial evidence supports the court's findings here. Sergio Mazon Rubio, chairman of the Mazon Group, Desarrollo's predecessor, testified that Sinomex's defaults had been cured by the settlement agreement, thereby allowing Sinomex to freely exercise its options to extend the lease under the 1998 addendum. Moreover, he testified about the special features of the building, which included an L-shape design, separate loading docks, and reinforced flooring. He and another Desarrollo employee explained that the building's

unique design was a disincentive to prospective tenants. Thus, the court did not abuse its discretion in finding no breach of the duty of good faith and fair dealing by Desarrollo.

**Disposition**

¶33 For the foregoing reasons, we affirm. Both parties have requested attorney fees and costs on appeal. Because Kader has not prevailed on appeal, we deny its request. In our discretion, we also deny Desarrollo's request for attorney fees but grant its request for costs, contingent on its compliance with Rule 21(a), Ariz. R. Civ. P.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

21