NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

YAM CAPITAL III, LLC, *Plaintiff/Appellee*,

*v.*

JOE S. BAILEY, et al., *Defendants/Appellants*.

No. 1 CA-CV 22-0283
FILED 1-26-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-002929
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Quarles & Brady LLP, Phoenix
By Brian A. Howie, Jason D. Curry, Anthony F. Pusateri
*Counsel for Plaintiff/Appellee*

Walker & Peskind PLLC, Scottsdale
By Richard K. Walker
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1        Joe and Annette Bailey appeal the superior court's ruling finding enforceable a guaranty executed in favor of YAM Capital III, LLC. The Baileys also challenge the superior court's exercise of personal jurisdiction over them. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        In October 2017, YAM loaned $7.7 million to GS Hospitality, LLC (GSH), a company owned and controlled by Joe Bailey. A deed of trust on a Hollister, Missouri hotel secured the loan, which the Baileys also personally guaranteed.

¶3        In April 2019, GSH defaulted on the loan. In May 2020, in a Missouri action, YAM foreclosed on the hotel and sold the related personal property. YAM purchased the hotel and personal property on credit bids totaling $4.2 million and credited that amount against the amount GSH still owed on the loan.

¶4        In March 2020, two months before YAM foreclosed, YAM filed this Arizona case against the Baileys seeking to enforce the guaranty and then moved for summary judgment on the guaranty. The Baileys opposed the motion, arguing: (1) the superior court lacked personal jurisdiction over them; (2) the guaranty was an unconscionable adhesion contract; and (3) they were entitled to a credit matching "the fair market value of the trust property on the date of the sale" under A.R.S. § 33-814.A. The Baileys later reasserted their personal jurisdiction arguments in a separate motion to dismiss.

¶5        The superior court denied both motions. Though the superior court did not find the Baileys' unconscionability arguments convincing, it agreed A.R.S. § 33-814.A protections applied. Ultimately, the superior court found a genuine issue of material fact as to YAM's damages and denied YAM's summary judgment motion. Upon Yam's request, the superior court

clarified the only remaining unresolved issue was "the fair market value of the collateral on . . . the date of the trustee's sale."

**¶6** The matter proceeded to an evidentiary hearing. YAM offered testimony from a real estate appraiser specializing in hotels, who valued the hotel at $4.47 million. The Baileys offered testimony from a business valuation expert, who valued the hotel at approximately $8 million. Joe Bailey also testified he valued the hotel at $11.4 million.

**¶7** The superior court found the Baileys' expert's testimony "significantly less persuasive" than YAM's expert and gave Joe Bailey's opinion "very little weight." The superior court then determined the hotel's fair market value was $4.57 million on the date of the trustee's sale. Crediting that amount against the outstanding indebtedness, the superior court entered final judgment against the Baileys for nearly $4.8 million and awarded YAM a portion of its attorney fees and costs.

**¶8** The Baileys timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

## DISCUSSION

### I.    The guaranty's forum selection clause is enforceable.

**¶9** The Baileys renew their argument the superior court lacked personal jurisdiction over them. Under the guaranty's forum selection clause, the Baileys agreed to "submit[] to jurisdiction in any action or proceeding commenced by [YAM]" in "any superior court of the state of Arizona." The Baileys contend the forum selection clause is unenforceable because it limits only them, not YAM, to filing suit in Arizona.

**¶10** A litigant may contractually consent to personal jurisdiction in a particular forum. *See Morgan Bank (Del.) v. Wilson*, 164 Ariz. 535, 537 (App. 1990). This court reviews the enforceability of a forum selection clause *de novo. Dunn v. FastMed Urgent Care PC*, 245 Ariz. 35, 41, ¶ 22 (App. 2018). This court will invalidate a forum selection clause if:

> (1) the inclusion of the clause in the agreement was the product of fraud or overreaching;

> (2) the party wishing to repudiate the clause would effectively be deprived of [the party's] day in court were the clause enforced; or

3

(3) enforcement would contravene a strong public policy of the forum in which suit is brought.

*RT Auto. Ctr., Inc. v. Westlake Servs. LLC*, 253 Ariz. 91, 94, ¶ 9 (App. 2022) (citation omitted). The challenging party "must meet a heavy burden of proof, even when the designated forum is a geographically remote location." *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 377, ¶ 20 (App. 2001).

**¶11** The Baileys do not show YAM fraudulently procured this term, the term violates public policy, or it deprived them of their day in court. Indeed, they fully participated in this litigation. *See Desarrollo Immobiliario y Negocios Industriales De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co. Ltd.*, 229 Ariz. 367, 373, ¶ 18 (App. 2012) (affirming enforcement of forum selection clause because it did not preclude the challenging party "from presenting evidence or witnesses").

**¶12** The Baileys also contend they did not have sufficient minimum contacts with Arizona to justify the superior court's exercise of personal jurisdiction. "But when the exercise of jurisdiction is based on the parties' consent through a forum selection clause, courts need not conduct an analysis of the defendant's contacts with the forum." *Desarrollo*, 229 Ariz. at 373, ¶ 19. We, thus, need not analyze the Baileys' Arizona contacts.

## II. The Baileys did not show the guaranty is unconscionable.

**¶13** Next, the Baileys argue the court erred in concluding "[t]he acquisition of a $7.7 million commercial loan . . . is not, as a matter of law, the type of contract that in Arizona is subject to an 'adhesive as unconscionable' analysis." Commercial contracts can be, though rarely are, unconscionable. *See, e.g.*, *Salt River Project Agr. Imp. & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 374 (1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403 (2005). That being said, "[o]ur law generally presumes, especially in commercial contexts, that private parties are best able to determine if particular contractual terms serve their interests." *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008); *see also Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 219, ¶ 7 (App. 2002) ("The nature and extent of a guarantor's liability depends upon the terms of the guaranty contract.").

**¶14** The Baileys contend "numerous purported waivers of [their] . . . rights . . . in the Guaranty amount to nothing less than the extinguishment of virtually all the rights [they] . . . might ever have had or imagined having." Then, they simply list guaranty provisions and claim

they are "oppressive and unconscionable." Neither in their motion to dismiss nor in their response to YAM's summary judgment motion do the Baileys explain the reason any provisions are "oppressive or unconscionable." Because the Baileys did not develop this argument, we need not address it further. *See, e.g.*, *Boswell v. Fintelmann*, 242 Ariz. 52, 54 n.3, ¶ 7 (App. 2017) (finding waiver when an appellant "fail[ed] to develop and support [the appellant's] conclusory arguments").

## III. The superior court did not err in clarifying its summary judgment ruling.

**¶15** The Baileys argue the superior court's clarification ruling conflicts with its initial ruling denying YAM's summary judgment motion and essentially reverses the denial of the motion. We disagree.

**¶16** In its initial ruling, the superior court rejected the Baileys' unconscionability arguments, saying it "easily disposed of" them. Then the superior court found A.R.S. § 33-814.A protections applied and a genuine issue of material fact existed regarding YAM's damages.

**¶17** Notably, the superior court commented only on this one fact question though it discussed the Baileys' unconscionability, adhesion contract, and subject matter jurisdiction arguments. The initial ruling, thus, is consistent with the superior court's later clarification when it said the only remaining issue was "the fair market value of the collateral on . . . the date of the trustee's sale." This portion of the initial ruling also renders irrelevant the Baileys' argument YAM did not present undisputed damages evidence with its summary judgment motion.

**¶18** The Baileys then contend YAM did not offer undisputed evidence "to warrant summary judgment on the Baileys' affirmative defense asserting a breach of the covenant of good faith and fair dealing." Assuming the Baileys can assert a breach of the covenant of good faith and fair dealing as an affirmative defense, they bore the burden to show any such breach occurred. *See, e.g.*, *Millers Nat'l Ins. Co. v. Taylor Freeman Ins. Agency*, 161 Ariz. 490, 496 (App. 1989) (explaining appellants bear the burden of proving their affirmative defenses). The Baileys cited no evidence of such a breach in their response to YAM's summary judgment motion. Instead, they repeated their unsupported contention the guaranty was "unconscionable and unenforceable" because of "YAM's overreaching." *See* Ariz. R. Civ. P. 56(c)(3)(B)(ii) (party opposing summary judgment must present facts establishing "a genuine dispute or otherwise preclude summary judgment").

**IV.    This court does not reweigh the evidence of market conditions on appeal.**

**¶19**        Deficiency actions following a trustee sale are governed by statute. *See* A.R.S. § 33-814.A. The relevant statute says:

> In any such action . . . , the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher. . . . The fair market value shall be determined by the court at a priority hearing upon such evidence as the court may allow. The court shall issue an order crediting the amount due on the judgment with the greater of the sales price or the fair market value of the real property.

*Id.* The statute defines "fair market value" as

> the most probable price, as of the date of the execution sale, . . . after deduction of prior liens and encumbrances with interest to the date of sale, for which the real property or interest therein would sell after reasonable exposure in the market under conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably and for self-interest, and assuming that neither is under duress."

*Id.*

**¶20**        The superior court must base its fair market value determination on the facts and circumstances of each case, and it may rely on testifying experts' value opinions. *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 592, ¶ 18 (App. 2021). This court will sustain "a result anywhere between the highest and lowest estimate which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable." *Id.* (quoting *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 362-63, ¶ 25 (App. 2013), *vacated in part*, 236 Ariz. 410, 415 (2014)).

**¶21**        The Baileys argue market conditions in May 2020, shortly after the start of the COVID-19 pandemic, made a fair sale impossible, citing the statute's reference to "conditions requisite to fair sale." But they cite no authority suggesting this language allows the superior court to value the trust property on any date other than "the date of the sale." In any event,

the parties' experts disagreed as to whether determining a fair sale was possible. This court does not reweigh conflicting expert testimony on appeal. *CSA 13-101 Loop*, 233 Ariz. at 363, ¶ 25. And to the extent the Baileys contend the trustee sale in the Missouri action should not have occurred on May 6, 2020, that issue is not before us.

**V.**     **The superior court did not abuse its discretion when it precluded the Baileys' expert from criticizing the real estate appraisal methods of YAM's expert.**

**¶22**     The Baileys next contend the court erred in finding their expert was not qualified to criticize the methods of YAM's expert. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Ariz. R. Evid. 702. This court reviews the superior court's decision to admit or exclude evidence under Rule 702 for an abuse of discretion. *See McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 249, ¶ 10 (App. 2013).

**¶23**     As noted above, YAM's expert is a real estate appraiser. The Baileys' expert, a business valuator, admitted during *voir dire* he is not a real property appraiser and has never done a real estate appraisal. He also admitted he is not licensed as a real estate appraiser and has never been qualified in any court to testify about real estate appraisals. Though the Baileys contend business valuation and real estate appraisal are "closely related," they present no evidence to support that contention. The superior court, thus, did not abuse its discretion in concluding the Baileys' expert lacked sufficient qualifications to criticize the real estate appraisal methods of YAM's expert.

## VI.    The superior court did not abuse its discretion by excluding two pre-sale hotel appraisals.

¶24         The Baileys also argue the superior court erred when it excluded evidence of two hotel appraisals, one performed in 2015 and one in 2017. The superior court concluded the Baileys could not use the appraisals as direct evidence of fair market value because YAM could not cross-examine their authors. This court will not disturb this ruling absent an abuse of discretion and resulting prejudice. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996). Likewise, the Baileys contend Joe Bailey provided adequate foundation for the 2015 appraisal, but the court excluded the appraisals on hearsay grounds.

¶25         Further, the Baileys argue YAM waived all objections to the appraisals when it listed them in its pretrial designations. But YAM objected to both appraisals in the joint pretrial statement, and the Baileys did not argue waiver at the evidentiary hearing. The Baileys also do not show they suffered any prejudice. The Baileys' expert relied on the appraisals in his analysis, and Joe Bailey testified regarding his recollection of the appraisals. We, thus, reject the Baileys' waiver argument. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court . . . should be afforded the opportunity to correct any asserted defects . . . errors not raised in the trial court cannot be raised on appeal.").

## VII.    The superior court did not abuse its discretion in determining the Big Cedar documents were inadmissible to prove fair market value.

¶26         The Baileys then argue the superior court erred when it excluded two contracts—one signed, one unsigned—between third party, Big Cedar, and YAM. These contracts purportedly reflect Big Cedar's initial offer on, and later purchase of, the hotel. The superior court admitted both documents into evidence but ruled they were inadmissible hearsay as to fair market value.

¶27         The Baileys do not present any evidence or argument to show that ruling was erroneous. Instead, they contend YAM waived all objections by introducing the Big Cedar documents "through its Deposition Designations, stating that they were 'admissible for all purposes.'" But YAM objected to the Big Cedar documents on multiple grounds, including hearsay, in the joint pretrial statement. The Baileys did not raise waiver at the hearing, and they only contend on appeal the superior court should

have admitted the Big Cedar documents "[a]s a matter of common sense." The Baileys, thus, have shown no abuse of discretion.

## VIII. Sufficient evidence supports the superior court's fair market value determination.

¶28        The Baileys contend the "[g]reat [w]eight of the [r]ecord [e]vidence" does not support the superior court's fair market value determination. They first criticize YAM's expert for not performing "an analysis under the cost approach," citing *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238 (App. 1983). But *United Cal. Bank* did not say real estate appraisers must use the cost approach. Instead, in affirming the superior court's value findings, this court said the cost approach "'may yield the most accurate estimate of value' where . . . the comparable sales or other market data are of limited value and the income approach is difficult to apply because the business is relatively new." 140 Ariz. at 298 (citation omitted). This court also said, "income and market approaches . . . may be appropriate in particular circumstances." *Id*.

¶29        YAM's expert explained his reason for not using the cost approach, saying "it's more relevant for proposed properties and a property that has just opened and does not have an established operating history" and "does not reflect the way pricing decisions are made by potential [hotel] buyers" or "the way lenders who lend on existing properties are evaluating potential loans." For those reasons, he chose the income and market approaches, giving the most weight to the income approach. Though the Baileys' expert testified he believed the cost approach was best in this case, the superior court had discretion to resolve the conflicting expert opinions. *See CSA 13-101 Loop*, 233 Ariz. at 363, ¶ 25.

¶30        The Baileys also challenge the superior court's decision to give "very little weight" to Joe Bailey's fair market value opinion. An owner can testify as to the value of his or her property, but the superior court has discretion to give such testimony the appropriate weight. *United Cal. Bank*, 140 Ariz. at 303 (citation omitted). Here, Joe Bailey appears to have largely adopted the conclusions of the 2017 appraisal:

> I wanted to have this motel for my children, my sons, and my granddaughters. That was my goal. So I believe it was worth 11.4 [million] because YAM represented to me, and [the 2017 appraiser] represented to me, and we all agreed. I agreed with them it was worth $11,400,000.

He also acknowledged he had no expertise in real estate appraisal. The superior court's decision to give his opinion little weight, thus, was not an abuse of discretion.

**ATTORNEY FEES**

**¶31**     Both parties request attorney fees under A.R.S. § 12-341.01.A, which permits a discretionary award to the successful party in an action arising out of a contract. YAM also cites section 1.8 of the guaranty obligating the Baileys to pay "all costs and expenses (including court costs and attorneys' fees) incurred by [YAM] in the enforcement [of the guaranty]." This court generally enforces a contractual attorney fee provision according to its terms. *Berry v. 352 E. Va., L.L.C.*, 228 Ariz. 9, 13, ¶ 17 (App. 2011). But this court retains discretion to limit the award to a reasonable amount. *McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 270, ¶ 16 (App. 2007).

**¶32**     Because YAM is the successful party in this appeal, we award reasonable attorney fees and taxable costs upon compliance with ARCAP 21. Consequently, we deny the Baileys' fee request.

**CONCLUSION**

**¶33**     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA

10